A96A1819. IN THE INTEREST OF R. U. et al., children.
(477 SE2d 864)

Judge Harold R. Banke.

The natural parents of R. U. and J. U. appeal from a juvenile court order terminating their parental rights. In their sole enumeration of error, they challenge the sufficiency of the evidence.

The record shows that December 1994 was a turning point for the parents. Since that time, they have made steady improvement individually and in their relationship and have accomplished many of the goals included in the case plan developed by the Department of Family & Children Services ("DFCS"). In fact, DFCS presented no admissible evidence after December 1994 of any parental misconduct or inability.

The State's evidence of events prior to December 1994 amply documents the parents' marital and personal problems. The father testified that the biracial couple had gotten along well during their 11-year marriage until they moved to Georgia in 1991, when the wife, who is of African-American descent, experienced racial problems which disturbed her. The record shows that between 1991 and December 1994 the mother abused both alcohol and drugs and had mental problems which included depression, bipolar and borderline personality disorders, and an attempted suicide. The father was unemployed and had emphysema and arthritis.

In 1993, in their most damaging conflict, both parents requested and received protective orders to prevent a continuation of their mutual physical abuse. It is undisputed that DFCS obtained custody of the children due to the mother's substance abuse and mental problems and the father's health problems and admitted inability to parent alone.

Since December 1994, both parents have received family coun-

seling and psychiatric care. They have also attended Parents Anonymous. The mother completed an alcohol and drug awareness program and had not tested positive for drugs in over eight months as of September 1995. She also completed a class on child care. The father testified that his health was much improved, he had not imbibed alcohol since Christmas 1994, he intended to try to re-establish his family, and he had joined a church. The parents have maintained regular contact with the children through visits supervised by DFCS. With very few exceptions, the only regular visits they missed were due to illness or hospitalization. The children currently reside with their paternal grandfather and step-grandmother.

At the parental rights termination hearing on August 31, 1995, the DFCS caseworker testified that after R. U. was taken into DFCS custody in June 1993, she developed a case plan requiring the parents to keep a permanent home, live alcohol and drug free, cooperate with DFCS, attend group meetings for parents of children with hyperactivity, and maintain regular and consistent contact with the child. The mother was also supposed to maintain employment. The record indicates that they have accomplished many of these goals, though not necessarily to the caseworker's satisfaction. The caseworker testified that if parental rights were terminated, the grandparents would be given the opportunity to adopt the children, but if they did not adopt, alternative adoption placement would be pursued. She also stated that at one point the parents claimed she was biased and had threatened her life.

At the hearing, the couple's family counselor characterized their improvement during the past year as "very consistent." He also testified that nothing about the couple would lead him to believe they were incapable of caring for their children.

Significantly, the children's guardian ad litem submitted a post-hearing recommendation to the court requesting that the court deny DFCS' motion to terminate parental rights. She stated that termination would not be in the children's best interest because if the paternal grandparents adopted them, the $400 in monthly social security benefits the children received from their father would be terminated. She also noted that the paternal grandfather was 80 years old and the children were four and five. The guardian ad litem reported that the parents had made positive changes in their lives and observed that many of the negative actions they took predated the filing of the petition. However, she did not believe the parents were ready to take custody of the children. Instead, the guardian ad litem recommended that DFCS retain custody of the children. While acknowledging that there was no evidence of any impropriety on the caseworker's part, the guardian ad litem also recommended that a different caseworker be assigned. *Held*:

442

The termination of parental rights under OCGA § 15-11-81 involves a two-step analysis.[1] First, the juvenile court must find clear and convincing evidence of parental misconduct or inability. *In the Interest of L. M.*, 219 Ga. App. 746, 748 (2) (466 SE2d 887) (1995). Second, the court must determine whether termination is in the best interests of the children. Id. The standard of review in such cases is whether a rational trier of fact could have found clear and convincing evidence that the parents' rights had been lost. Id.

In this case, the evidence amply supports the juvenile court's findings that the children were deprived and the lack of proper parental care or control caused the deprivation. OCGA § 15-11-81 (b) (4) (A). We agree with the guardian ad litem, however, that the evidence the deprivation is likely to continue or will not be remedied is insufficient. "A finding of unfitness must be based on present circumstances." *In re N. F. R.*, 179 Ga. App. 346, 348 (2) (346 SE2d 121) (1986). DFCS has provided no clear and convincing evidence of parental misconduct occurring after December 1994. On the contrary, the record amply documents the parents' efforts after that date to comply with the case plan and regain custody of their children. This is not to say, however, that reunification is appropriate at this time.

Like the guardian ad litem, we too question the propriety of the juvenile court's finding that termination was in the children's best interests. *In re Creech*, 139 Ga. App. 210, 211 (3) (228 SE2d 198) (1976) (abuse of discretion standard of review). Should the grandparents choose not to adopt, DFCS' plans to remove the children to another adoptive home, thereby separating them from the relatively secure environment they presently enjoy, would hardly promote at least their immediate stability. *In the Interest of J. M. G.*, 214 Ga. App. 738 (1) (448 SE2d 785) (1994) (merits of available placements relevant to determination of best interest).

" 'There is no judicial determination which has more drastic significance than that of permanently severing a natural parent-child relationship. . . .' [Cit.]" *Jones v. Dept. of Human Resources*, 168 Ga. App. 915, 916 (1) (310 SE2d 753) (1983). Due to the staleness of the evidence of parental misconduct and the absence of clear and convincing evidence that the deprivation is likely to continue, termination of parental rights is inappropriate. *McCormick v. Dept. of Human Resources*, 161 Ga. App. 163, 164 (2) (288 SE2d 120) (1982). Accordingly, the trial court's termination order is vacated, and the case is remanded for consideration of alternative dispositions as

---

[1] As a preliminary matter, we decline to address the parents' procedural argument challenging the timeliness of J. U.'s deprivation order because the parents failed to enumerate such as error. *Toledo v. State*, 216 Ga. App. 480, 482 (4) (455 SE2d 595) (1995).

authorized by OCGA § 15-11-81 (c). *Jones*, 168 Ga. App. at 916-917 (1); see *In the Interest of K. E. B.*, 190 Ga. App. 121, 126 (378 SE2d 171) (1989).

*Judgment vacated and case remanded with direction. Pope, P. J., and Smith, J., concur.*

DECIDED NOVEMBER 1, 1996.

Jerry W. Moncus, for appellants.

Michael J. Bowers, Attorney General, William C. Joy, Senior Assistant Attorney General, Shalen A. Sgrosso, Stephanie M. Baldauff, Assistant Attorneys General, Nancy E. Bradshaw, for appellee.