A99A1156. IN THE INTEREST OF K. M., a child.
(523 SE2d 640)

JOHNSON, Chief Judge.

A parent's rights to her child will be terminated only where there is clear and convincing evidence of present unfitness and where termination is in the best interest of the child. In deciding present unfitness, the juvenile court may consider a parent's past history. The mother's past history of drug abuse and incarceration, viewed in isolation, would certainly support a finding of unfitness. However, at the time of the last termination hearing, the mother's circumstances

had changed significantly: she was no longer in jail, was working full-time, had undergone drug counseling, and had established a home. As to the second issue, that of the best interest of the child, the evidence is undisputed that K. M., an older child, has a strong emotional attachment to her mother. Because of that bond and the mother's recent progress, the child's guardian ad litem recommended that the mother's parental rights not be terminated, at least not at that time. We agree with the guardian and hold that the juvenile court's decision terminating the mother's parental rights is not presently supported by clear and convincing evidence.[1] We therefore reverse.

The Henry County Department of Family & Children Services ("DFACS") took temporary custody of K. M. in August 1996, when she was seven years old, after the mother left K. M. with a friend and did not return for her. At the time DFACS took custody of the child, the mother was incarcerated for theft by taking. The mother was jailed and released several more times while K. M. was in the custody of DFACS. She was jailed for such crimes as shoplifting, theft by receiving stolen property, driving with a suspended license, theft by taking, theft by deception and violating probation. It is not clear from the record how much time the mother spent in jail.

In October 1996, DFACS developed a case plan designed to reunite K. M. with her mother. The plan required the mother to maintain contact with DFACS, demonstrate sobriety, remain drug-free, maintain a permanent and stable home, and protect the child from sexual abuse. A DFACS caseworker testified that the mother complied only with the requirement that she maintain contact with DFACS.

A similar case plan was developed in March 1997. The caseworker testified that the mother failed to comply with any of the goals. A third plan was developed in September 1997. The goals remained the same except, this time, DFACS changed the overall goal from reunification to termination of parental rights.

At a termination hearing held in September 1998, the caseworker testified that the mother had spent seven of the past twelve months in jail. She added that the mother tested positive for drug use in April 1998.

The mother testified that she visited the child every two weeks as scheduled by DFACS, except for the times she was incarcerated. Of the 50 scheduled visits, the mother attended 19; the caseworker agreed that visits were missed due to the mother's incarceration.

---

[1] The juvenile court also terminated the parental rights of K. M.'s father. Only the mother appeals in this case.

When the caseworker informed the mother that the visits would be cut from twice a month to once a month, the mother complained and tried to get the number of visits increased. The mother testified that she brought K. M. something every time she visited, usually an outfit or two. The mother also visited her on her birthdays and had K. M.'s grandmother visit K. M. on Christmas when the mother was in jail. The mother said she kept DFACS advised of her whereabouts and presented documentation showing that she attended 45 Alcoholics Anonymous meetings in 1997.

A counselor from the detention center where the mother was confined from July 1998 through September 1998 testified that the mother successfully completed courses in parenting and victim impact and was counseled in substance abuse and family violence. The counselor taught some of the courses the mother attended and met individually with her at least twice a month. The counselor believed that the mother was motivated to do what was necessary to regain custody of K. M. and lead a drug-free life.

The mother's brother testified that he stayed in close contact with the mother during her most recent incarceration and thought the mother's attitude changed during the last detention. He believed she now had a positive attitude and was looking forward to "getting her life straight."

At the October 26, 1998 hearing, a month after her release from detention, the mother testified that she was now working full-time at a restaurant and was renting a home. She had made arrangements for K. M. to sleep at her great-grandmother's house while she works nights at the restaurant.

The child's guardian ad litem submitted a written report to the juvenile court recommending that the juvenile court defer ruling on the termination petition. The guardian noted that she met with the child and that the child is extremely attached to her mother. This is supported by the mother's testimony that K. M. does not want visitation with her mother to end and becomes upset when a visitation session is over and by case plan entries indicating that the child wants to continue contact with and return home to her family. The guardian ad litem wrote that the mother appeared to be making progress and recommended waiting to see whether the mother continued to do so.

"The termination of parental rights under OCGA § 15-11-81 involves a two-step analysis. First, the juvenile court must find clear and convincing evidence of parental misconduct or inability. [Cit.]" (Footnote omitted.) *In the Interest of R. U.*, 223 Ga. App. 440, 442 (477 SE2d 864) (1996). Second, the court must determine whether termination is in the best interest of the child. Id. As there is no judicial determination that has more drastic significance than the permanent severance of a natural parent-child relationship, the severance

of that relationship must be exercised cautiously and scrutinized deliberately. *In the Interest of M. L. P.*, 231 Ga. App. 223 (498 SE2d 786) (1998). The standard of review in such a case is whether a rational trier of fact could have found clear and convincing evidence of present unfitness. Id.

It is clear that K. M. is deprived and the deprivation is caused by the mother's failure to properly care for her. See OCGA § 15-11-81 (b) (4) (A) (i) and (ii). However, "[e]vidence of past unfitness, standing alone, is insufficient to terminate the rights of a parent in her natural child; clear and convincing evidence of *present* unfitness is required." (Citations and punctuation omitted; emphasis in original.) *In the Interest of R. A.*, 226 Ga. App. 18, 20 (486 SE2d 363) (1997); see *In the Interest of D. C. N. K.*, 232 Ga. App. 85, 90 (501 SE2d 268) (1998). Despite the mother's past conduct, there is not clear and convincing evidence of present unfitness.

During her most recent incarceration, the mother underwent extensive counseling and seemed to undergo a change in attitude and motivation. In the period between her release and the last termination hearing, she became gainfully employed, rented a home and made arrangements for K. M.'s care while she works.

We realize that a short period of progress will not, in most cases, negate years of parental misconduct. See *In the Interest of J. S.*, 232 Ga. App. 876, 880 (1) (502 SE2d 788) (1998). In this case, however, the mother's recent progress is significant and, according to her counselor and brother, seems to be accompanied by the mother's newfound desire to change her life.[2]

Termination of parental rights is a remedy of last resort which can be sustained only when there is clear and convincing evidence that the cause of the deprivation is likely to continue. See *In the Interest of R. M.*, 194 Ga. App. 888, 889 (3) (392 SE2d 13) (1990). The evidence is not clear and convincing, at least at this time, that the deprivation is likely to continue.

In addition, the extreme sanction of termination cannot be imposed where it is not in the best interest of the child. See OCGA § 15-11-81 (a); *In the Interest of C. J. S.*, 195 Ga. App. 741, 743-744 (5) (395 SE2d 35) (1990). Ten-year-old K. M. is emotionally attached to her mother and desires to be reunited with her. The permanent severance of this relationship would be detrimental to this child's well-being. See generally id.; *In the Interest of R. U.*, supra. While we are reluctant to reverse the juvenile court's determination, no judicial determination is more drastic than the permanent severing of the

---

[2] We note that we have no way of knowing whether the mother has continued on this path since the last hearing. On remand, however, the juvenile court will have, and of course will consider, that information in reevaluating the case.

parent-child relationship. *In the Interest of K. J.*, 226 Ga. App. 303, 306 (1) (486 SE2d 899) (1997); *In the Interest of C. J. S.*, supra. In light of the mother's recent progress and the attachment the child has to her, we reverse the judgment and remand the case for the establishment of a reunification plan, subject to whatever disposition is warranted by future events and those occurring since the last termination hearing. See *In the Interest of D. C. N. K.*, supra at 90.

*Judgment reversed and case remanded with direction. Pope, P. J., and Smith, J., concur.*

DECIDED OCTOBER 19, 1999 —
RECONSIDERATION DENIED NOVEMBER 4, 1999.

*Kelley S. Powell*, for appellant.

*Thurbert E. Baker, Attorney General, Dennis R. Dunn, Deputy Attorney General, William C. Joy, Senior Assistant Attorney General, Shalen A. Sgrosso, Stephanie B. Hope, Assistant Attorneys General, James T. Chafin III*, for appellee.