A00A2303. IN THE INTEREST OF N. Y. et al., children.
(542 SE2d 137)

ELDRIDGE, Judge.

The natural father of N. Y. and M. Y. appeals the Whitfield County Juvenile Court's order extending the temporary legal custody

---

of his children with the Whitfield County Department of Family & Children Services ("DFCS") under former OCGA § 15-11-41 (o).[1] The standard of review as to cases "involving the termination of parental rights[2] is whether a rational trier of fact could have found by clear and convincing evidence that the natural parent's rights have been lost. [Cit.]" *In the Interest of B. D.*, 236 Ga. App. 119 (511 SE2d 229) (1999). Finding no reversible error, we affirm the judgment of the juvenile court. *Held*:

The termination of parental rights occurs upon the application of a two-step analysis. *In the Interest of R. U.*, 223 Ga. App. 440, 442 (477 SE2d 864) (1996). First, the juvenile court must find clear and convincing evidence that parental misconduct or inability exists under OCGA § 15-11-81 (b).[3] *In the Interest of D. I. W.*, 215 Ga. App. 644, 645 (1) (457 SE2d 804) (1994). Second, the court must determine if termination is in the best interests of the children. *In the Interest of R. U.*, supra.

DFCS removed M. Y. and N. Y. from the home in January and March 1999, respectively. N. Y. was then 14 years old; M. Y. was 12. By separate unappealed orders, the juvenile court thereafter adjudicated the children deprived with the consent of the parties. Following a two-day hearing in March 2000, the juvenile court granted DFCS' motions, extending temporary legal custody of the children with DFCS for a period of one year; granted DFCS' motion for nonreunification as to the mother; and denied DFCS' nonreunification motion as to the father. The mother does not appeal from the juvenile court's order. In a single enumeration of error, the father argues that the juvenile court erred in extending custody of the children with DFCS in that DFCS' evidence showing his parental unfitness was stale. We disagree.

Viewed in a light most favorable to the juvenile court's determination, *In the Interest of J. M. B.*, 231 Ga. App. 875, 876 (501 SE2d

---

[1] The 2000 amendment, effective July 1, 2000, redesignated subsections (b) through (r) of former OCGA § 15-11-41 as subsections (a) through (q) of present OCGA § 15-11-58. Ga. L. 2000, p. 20. Former OCGA § 15-11-41 (o) was redesignated as OCGA § 15-11-58 (n).

[2] The removal of custody of a child from its parents in favor of DFCS is an action suspending parental rights. *Rodgers v. Dept. of Human Resources*, 157 Ga. App. 235 (1) (276 SE2d 902) (1981). While such an action does not terminate parental rights in a final sense, id., it necessarily involves the termination of parental rights. It follows that an action extending the removal of a child from its parents and further placing custody in DFCS, as here, also involves the termination of parental rights.

[3] Parental misconduct or inability is determined by finding: 1) that the child is deprived; 2) that the lack of proper parental care or control is the cause of the deprivation; 3) that such child's deprivation is likely to continue or will not be remedied; and 4) that continued deprivation is likely to cause serious physical, mental, emotional or moral harm to the child. OCGA § 15-11-81 (b) (4) (A). *In the Interest of D. I. W.*, 215 Ga. App. 644, 645 (1) (451 SE2d 804) (1994).

259) (1998), the evidence shows that approximately six months before the March 2000 hearing, N. Y., then fifteen, suffered anal intercourse while on the second of two unsupervised visits to her father's home. Though he subsequently denied knowing what occurred, the father and his new wife, age 18,[4] sat in an adjacent room as N. Y. was sodomized by her boyfriend. On N. Y.'s first unsupervised visit to the home, N. Y. and her boyfriend got engaged with the father's consent, though he explained that he had given it to avoid alienating her. Eight months before the hearing, the father walked out on psychological testing required by the case plan associated with the court's initial removal order, delaying its completion. The father thereafter refused to follow through with individual counseling. Dr. David Stevens, a clinical psychologist, testified that on evaluating M. Y. she reported being physically and verbally abused by her father from age six on. M. Y. reported this approximately 11 months before the March 2000 hearing. The father admitted he "whipped [M. Y.] with a belt." Further, a juvenile court intake and probation officer testified that N. Y. had written a suicide note a year before the hearing stating, "she was afraid of her father, that he had threatened to kill her and her mother," while "screaming and hollering" and using words like "bitch" and "whore." This evidence of parental misconduct and inability was not outdated. See *In the Interest of B. D.*, supra at 120 (1) ("[I]n a termination case, even evidence that is a year or two old is pertinent. [Cit.]").

In other testimony, Dr. Stevens testified that he did not favor any attempt to reunify the family until family counseling was complete and that he had "serious concerns about [the father's] parental judgment." Dr. Stevens had met with the family only twice at the time of the hearing below. The record of the father's psychological evaluation, a copy of which was entered in evidence, indicated that the father required individual counseling. In this regard, the juvenile court ordered temporary legal custody of the children extended with DFCS, properly finding that while the father had completed psychological testing, he refused to follow through with individual counseling. The court further found that the "Citizen's Panel attempted to excuse him from this requirement [individual counseling] so long as [the father] participated in family counseling with the children and so long as the visits were progressing well." After N. Y. was sodomized, DFCS stopped any further contact between the father and N. Y. In denying M. Y.'s claims of physical abuse, the father testified that M. Y. was a "spoiled child." In other testimony, the father

---

[4] The father testified that he learned his new wife's age as he married her, the marriage occurring a month after he divorced the mother.

admitted that his new wife did not work as the mother had, reducing his income. Finally, asked if there were anything he would not do to have the children returned to him, the father testified: "No, I've even told [DFCS] that I fully intend on going on through the family counseling because of the divorce and everything that happened. . . ." However, " 'the decision as to a child's future must rest on more than positive promises which are contrary to negative past fact.' *In the Interest of J. L. Y.*, 184 Ga. App. 254, 257 (361 SE2d 246) (1987)." *In the Interest of D. I. W.*, supra at 646.

This evidence authorized the juvenile court to find clear and convincing evidence of parental misconduct or inability and that the children's deprivation[5] would likely continue or would not be remedied in the absence of an extension of temporary legal custody in DFCS to permit the father to complete individual counseling and to participate in family counseling, as appropriate. *In the Interest of D. I. W.*, supra; *In the Interest of B. D.*, supra. The evidence likewise was sufficient to support a finding that extending DFCS' temporary legal custody of the children was in their best interests. "Those same factors which show the existence of parental misconduct or inability can also support a finding that the termination of parental rights of the defaulting parent would be in the child's best interest." (Citations and punctuation omitted.) *In the Interest of J. S.*, 232 Ga. App. 876, 881 (1) (502 SE2d 788) (1998).

*Judgment affirmed. Blackburn, P. J., and Barnes, J., concur.*

DECIDED NOVEMBER 8, 2000.

*Jerry W. Moncus*, for appellant.

*Thurbert E. Baker, Attorney General, Dennis R. Dunn, Deputy Attorney General, William C. Joy, Senior Assistant Attorney General, Shalen S. Nelson, Laura W. Hyman, Assistant Attorneys General*, for appellee.

---

[5] In any event, the unappealed earlier findings of deprivation as to the children established their status as deprived for purposes of the March 2000 hearing. *In the Interest of J. M. B.*, supra at 878 (1) (a).