A02A1473. IN THE INTEREST OF R. L. K., a child.
A02A1484. IN THE INTEREST OF K. D. R., a child.
(565 SE2d 880)

ELDRIDGE, Judge.

In Case Nos. A02A1473 and A02A1484, appellant, the biological mother of R. L. K. and K. D. R., appeals from separate orders of the Spalding County Juvenile Court terminating her parental rights in the children. In addition to the parental rights of the appellant's husband, the parental rights of the children's biological fathers, one unknown and the other putative, were also terminated. The appel-

---

lant enumerates as error the insufficiency of the evidence in both cases. Because these cases raise identical issues of law based on substantially the same facts, we consolidate them for disposition in a single appellate decision in the interest of judicial economy. Finding no error in either case, we affirm both. *Held*:

The standard of review pertinent to appellant's challenges to the sufficiency of the evidence is

> whether after reviewing the evidence in the light most favorable to the appellee, any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody have been lost. *In the Interest of A. C.*, 230 Ga. App. 395, 396 (1) (496 SE2d 752) (1998). We defer to the trial court's factfinding and affirm unless the appellate standard is not met. *In the Interest of S. N. N.*, 230 Ga. App. 109 (495 SE2d 602) (1998).

(Punctuation omitted.) *In the Interest of A. S. O.*, 243 Ga. App. 1 (1) (530 SE2d 261) (2000).

> The termination of parental rights occurs upon the application of a two-step analysis. *In the Interest of R. U.*, 223 Ga. App. 440, 442 (477 SE2d 864) (1996). First, the juvenile court must find clear and convincing evidence that parental misconduct or inability exists under OCGA § [15-11-94] (b). *In the Interest of D. I. W.*, 215 Ga. App. 644, 645 (1) (451 SE2d 804) (1994). Second, the court must determine if termination is in the best interests of the children. *In the Interest of R. U.*, supra.

(Footnote omitted.) *In the Interest of N. Y.*, 246 Ga. App. 723, 724 (542 SE2d 137) (2000).

OCGA § 15-11-94 (b) required the juvenile court to determine parental misconduct or inability upon finding: (1) that the children were deprived; (2) that the lack of proper parental care or control was the likely cause of their deprivation; (3) that the children's deprivation was likely to continue or was not subject to remediation; and (4) that continued deprivation was likely to cause the children serious physical, emotional, or moral harm. OCGA § 15-11-94 (b) (4) (A) (i)-(iv). *In the Interest of A. S. O.*, supra at 1-2 (1); *In the Interest of N. Y.*, supra at 724, n. 3; *In the Interest of D. I. W.*, supra. Because the children were not in the custody of the appellant at the time of the termination hearing, the juvenile court was required to reach the foregoing

findings upon considering, in addition to other relevant factors,[1] "whether the [appellant] failed to make a bona fide attempt to communicate with the child; comply with court-ordered support of the child; or comply with a court-ordered reunification plan for a period of . . . one year prior to the termination proceeding. OCGA § [15-11-94] (b) (4) (C) (i)-(iii)." *In the Interest of J. H.*, 240 Ga. App. 309, 310-311 (523 SE2d 374) (1999); OCGA § 15-11-94 (b) (4) (C) (i)-(iii).

In August 1997, K. D. R., then a baby four months old, was taken into protective custody upon the verified petition of her maternal grandmother filed in the Juvenile Court of Fayette County. By her petition, K. D. R.'s grandmother averred that the appellant then lived with her; had shown little interest in caring for K. D. R.; had on several occasions left K. D. R. with her for periods in excess of 24 hours; had threatened to give K. D. R. to others for care; had a diagnosed personality disorder for which she had not sought treatment; and had made no effort to determine the identity of K. D. R.'s father. In October 1997, the Fayette County Juvenile Court adjudicated K. D. R. to be deprived and awarded temporary custody to the grandmother upon negligent acts and omissions of the appellant. These included appellant's

> [(1)] failure to provide for and care for the child, including routine feedings and hygiene needs of the child; [(2)] failure to return home and provide care for the child at the scheduled time on several occasions; [(3)] being a physically fit eighteen (18) year old who is unemployed and who has shown no ability to maintain a stable employment; [(4)] a current diagnosis of mental health problems including a personality disorder; [(5)] personal membership in the gangs

---

[1] OCGA § 15-11-94 (b) (4) (B) pertinently provides:

In determining whether the child is without proper parental care [or] control, the court shall consider, without being limited to, the following: (i) A medically verifiable deficiency of the parent's physical, mental, or emotional health of such duration or nature as to render the parent unable to provide adequately for the physical, mental, emotional, or moral condition and needs of the child; (ii) Excessive use of or history of chronic unrehabilitated abuse of intoxicating liquors or narcotic or dangerous drugs or controlled substances with the effect of rendering the parent incapable of providing adequately for the physical, mental, emotional, or moral condition . . . of the child; (iii) Conviction of the parent of a felony and imprisonment therefor which has a demonstrable negative effect on the quality of the parent-child relationship; (iv) Egregious conduct or evidence of past egregious conduct of the parent toward the child or toward another child of a physically, emotionally, or sexually cruel or abusive nature; (v) Physical, mental, or emotional neglect of the child or evidence of past physical, mental, or emotional neglect of the child or of another child by the parent; and (vi) Injury or death of a sibling under circumstances which constitute substantial evidence that such injury or death resulted from parental neglect or abuse.

known as "The Bloods" and "The Folks"; [(6)] having multiple sex partners; [(7)] exchanging sexual activity for benefits including permission to stay overnight at the partner's residence; [(8)] dropping out of high school prior to graduation and without serious attempt to obtain a G.E.D.; and [(9)] underage use and abuse of alcohol.

After a hearing on May 4, 1999, the Juvenile Court of Fayette County further adjudicated K. D. R. deprived upon finding that the grandmother had been incarcerated for cruelty to K. D. R. and that the appellant was not in compliance with the case plan it ordered for reunification of the family. Notably, the appellant had not completed a psychological evaluation; she was unemployed; she had not maintained employment; her house was in disarray; she had not rectified the loss of her driver's license for failure to appear for a traffic citation; she had been charged and jailed for writing bad checks; and, contrary to the court's order, she had permitted K. D. R. to visit the grandmother.

K. D. R.'s younger half-brother, R. L. K., was taken into protective custody on November 24, 1999, two days after he was born upon a deprivation petition filed by the Spalding County Department of Family & Children Services on behalf of the Georgia Department of Human Resources ("DFCS"). DFCS averred that its file as to K. D. R. remained open because the appellant had not completed the case plan for appellant's reunification with the child contained therein. Following a December 3, 1999 custody hearing on the deprivation petition, the juvenile court adjudicated R. L. K. deprived, finding, among other things, that the appellant admitted she was not yet in compliance with the case plan for reunification with K. D. R. in that she remained unemployed, had not recovered her driver's license, and had not completed the individual counseling which she had been ordered to obtain.

After a termination hearing in these cases a year later, the juvenile court terminated the appellant's parental rights in the children by separate orders for substantial noncompliance with the reunification plans the court had ordered for the children for periods of 12 months or longer. In doing so, the juvenile court found as to both children that the appellant had: (1) failed to maintain safe and stable housing; (2) failed to obtain and maintain gainful employment; (3) failed to pay child support[ ]; (4) not taken prescribed medication for depression; (5) not completed drug and alcohol screening; and (6) not obtained individual counseling. Further, the juvenile court found that since the time of its termination hearing the appellant had given birth to a third child who had been placed in foster care in Clayton County. Otherwise, the record shows that the appellant had volunta-

rily stopped all visitation with the children more than six months before the termination hearing.

While the appellant argues that, given additional time, she could resolve her financial difficulties and complete her case plans, "[t]he decision as to a child's future must rest on more than positive promises which are contrary to negative past fact." *In the Interest of J. L. Y.*, 184 Ga. App. 254, 257 (2) (361 SE2d 246) (1987). The appellant also argues that the evidence is insufficient to show that the children's deprivation is likely to continue in the future. We disagree. " '(T)he past conduct of [a] parent is properly considered by the court in determining whether such conditions of deprivation are likely to continue. (Cits.)' " *In the Interest of J. M. C.*, 201 Ga. App. 173, 174 (410 SE2d 368) (1991); *In the Interest of C. F.*, 251 Ga. App. 708, 714 (1) (c) (555 SE2d 81) (2001); *In the Interest of L. H.*, 236 Ga. App. 132, 136 (1) (511 SE2d 253) (1999). Moreover, "[s]ince no appeal was taken from the deprivation order[s of record, appellant] is bound by the [same]. *In the Interest of L. H.*, [supra at] 134 (1)." *In the Interest of A. S. O.*, supra at 2 (1).

Given the foregoing, we find clear and convincing evidence showing that the children are now deprived; that their deprivation is due to the lack of proper parental care or control; that their deprivation is likely to continue in the future as not subject to remediation; and that continued deprivation is likely to cause the children serious physical, mental, emotional, or moral harm. *In the Interest of D. I. W.*, supra at 645-646 (1).

"[I]n [considering] that termination of the [appellant's] parental rights would serve the best interests of the children, the court properly concerned itself with the need for stability in the children's lives." (Punctuation omitted.) *In the Interest of C. F.*, supra at 714 (2). The evidence was likewise sufficient to show that the finding that appellant's parental rights in the children had been lost was in their best interests. "Those same factors which show the existence of parental misconduct or inability can also support a finding that the termination of parental rights of the defaulting parent would be in the child's best interest." (Citations and punctuation omitted.) *In the Interest of N. Y.*, supra at 726; *In the Interest of L. H.*, supra.

*Judgments affirmed. Smith, P. J., and Ellington, J., concur.*

DECIDED MAY 29, 2002.

*Sullivan & Sturdivant, Harold A. Sturdivant, Michele W. Ogletree*, for appellant.

*Thurbert E. Baker, Attorney General, Dennis R. Dunn, Deputy Attorney General, William C. Joy, Senior Assistant Attorney General,*

*Shalen S. Nelson, Assistant Attorney General, LeAnne P. Cooper, Karen M. Calloway,* for appellee.