600 S.E.2d 430 (2004)
267 Ga.App. 492
In the Interest of M.T.M. et al., children.
No. A04A0922.
Court of Appeals of Georgia.
May 19, 2004.
Edenfield, Cox, Bruce & Classens, Michael J. Classens, Statesboro, for appellant.
Thurbert E. Baker, Atty. Gen., William C. Joy, Sr. Asst. Atty. Gen., Shalen S. Nelson, Asst. Atty. Gen., Newton, Smith, Durden, Kaufold & Rice, Sherri P. McDonald, Vidalia, for appellee.
PHIPPS, Judge.
Jessica Hitchcock appeals an order of the Juvenile Court of Candler County terminating her parental rights to her two minor sons. Hitchcock challenges the sufficiency of the evidence to support the court's decision. Viewing the evidence in a light most favorable to the judgment, we find it sufficient and affirm.
OCGA § 15-11-94(a) requires a court considering the termination of parental rights to first determine whether there is present clear and convincing evidence of parental misconduct or inability as provided in OCGA § 15-11-94(b). Under OCGA § 15-11-94(b)(4)(A), the court determines parental misconduct or inability by finding that:
(i) [t]he child is a deprived child, as such term is defined in Code Section 15-11-2; (ii) [t]he lack of proper parental care or control by the parent in question is the cause of the child's status as deprived; (iii) [s]uch cause of deprivation is likely to continue or will not likely be remedied; and (iv) [t]he continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the child.
*431 In determining whether the child is without proper parental care and control, OCGA § 15-11-94(b)(4)(B) mandates that the court consider, among other things:
[e]xcessive use of or history of chronic unrehabilitated abuse of intoxicating liquors or narcotic or dangerous drugs or controlled substances with the effect of rendering the parent incapable of providing adequately for the physical, mental, emotional, or moral condition and needs of the child; [c]onviction of the parent of a felony and imprisonment therefor which has a demonstrable negative effect on the quality of the parent-child relationship;... [i]njury or death of a sibling under circumstances which constitute substantial evidence that such injury or death resulted from parental neglect or abuse.[1]
If there is clear and convincing evidence of parental misconduct or inability, OCGA § 15-11-94(a) requires the court to consider "whether termination of parental rights is in the best interest of the child, after considering the physical, mental, emotional, and moral condition and needs of the child who is the subject of the proceeding, including the need for a secure and stable home." "On appeal, we view the evidence in the light most favorable to the juvenile court's ruling and determine whether a rational trier of fact could have found by clear and convincing evidence that the parental rights should have been terminated."[2]
When Hitchcock's two sons were four years old and two months old, they were taken into the emergency custody of the Candler County Department of Family and Children Services (DFCS) and placed in foster care after Hitchcock's older daughter died as an alleged result of a drug overdose administered by Hitchcock. Shortly after the child's death, Hitchcock was arrested and charged with unlawful sale of controlled substances. She pled guilty to these felony charges and was sentenced to three years' imprisonment. She was later charged with the murder of her deceased daughter by administering an excessive quantity of Tegretol. After her release from imprisonment on the drug charges, she was returned to county jail as a result of the murder charge. She subsequently entered a negotiated guilty plea under Alford to involuntary manslaughter and was sentenced to ten years' imprisonment to serve two. After being given credit for time served, however, she was released from the Candler County jail.
After DFCS had taken Hitchcock's children into custody, a case plan designed to reunify the children with her was formulated. The case plan contained five goals requiring Hitchcock to (1) be alcohol and drug free, (2) learn and demonstrate positive parenting skills, (3) visit her children, (4) obtain stable housing, and (5) meet the basic needs of the children by paying child support. While Hitchcock was in prison, however, the court changed the plan to one of nonreunification with her and ordered that reunification services be terminated. The court, nonetheless, stated in its order that if and when Hitchcock was released from incarceration, it would consider her communication and visitation with the children, the results of any psychological evaluation, and whether she had taken any available parenting classes or other self-improvement classes while incarcerated in determining whether to reunify her with the children.
1. Hitchcock bases her challenges to the sufficiency of the evidence on her testimony and certain other evidence that she did not generate positive results on any alcohol or drug screen since her release from incarceration, that she took parenting classes while in prison, that she visited with the children and demonstrated positive parenting skills during visits, and that she obtained gainful employment and made numerous child support payments after being released from incarceration. For these reasons, Hitchcock argues that the evidence demanded a finding that she had substantially fulfilled all reunification case plan goals.
But evidence relied on by DFCS authorized the court to find that Hitchcock had not received any substance abuse treatment *432 while in prison; that, after being released from incarceration, she had admitted to having taken numerous prohibited drugs, had been terminated from a drug treatment program in which she had enrolled, and had tampered with at least one drug screen to conceal her illegal or unauthorized drug use; that she had not attended parenting classes either in prison or after her release; that the residence she was occupying at the time of the termination hearing was entirely unsuitable for her children; and that she had only made one child support payment.
Viewed in a light most favorable to the juvenile court's ruling, the evidence authorized the court to find that Hitchcock continued to be an unrehabilitated drug abuser; that her felony convictions, imprisonment, and resultant separation from her children had had a demonstrably negative effect on the quality of her relationship with them; that the children's sibling died under circumstances evidencing parental neglect or abuse; that Hitchcock had failed to comply with the family reunification case plan;[3] and that the cause of her children's deprivation, therefore, had not been remedied.[4] Consequently, there is no merit in Hitchcock's claim that termination of her parental rights was unwarranted.
2. Hitchcock also contends that the court erred in finding that reasonable efforts were made by DFCS to reunify her with her children. A review of the order terminating Hitchcock's parental rights reveals no such finding. In a prior order, the court found that Hitchcock had waived this issue. Hitchcock has not shown error in that finding.
Judgment affirmed.
SMITH, C.J., and JOHNSON, P.J., concur.
NOTES
[1] OCGA § 15-11-94(b)(4)(B)(ii), (iii), (vi).
[2] (Footnote omitted.) In the Interest of M. M., 263 Ga.App. 353, 354-355, 587 S.E.2d 825 (2003).
[3] Compare In the Interest of A. A., 252 Ga.App. 167, 171-173(1)(c), 555 S.E.2d 827 (2001) (relied on by Hitchcock).
[4] Compare In the Interest of V.E. H., 262 Ga.App. 192, 197(2), 585 S.E.2d 154 (2003) (physical precedent only) and In the Interest of K. M., 240 Ga.App. 677, 680, 523 S.E.2d 640 (1999) (relied on by Hitchcock).