644 S.E.2d 906 (2007)
In the Interest of E.J., a child.
No. A07A0680.
Court of Appeals of Georgia.
April 6, 2007.
*907 Melaniece N. Bardley, for appellant.
Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Jerry W. Thacker, Elizabeth M. Williamson, for appellee.
BERNES, Judge.
The mother of four-year-old E.J. appeals the juvenile court's order terminating her parental rights. The mother contends that there was insufficient evidence supporting the trial court's findings. We disagree and affirm.
Termination of parental rights under OCGA § 15-11-94 requires the juvenile court to undertake a two-step process. First, the court must determine whether there is clear and convincing evidence of parental misconduct or inability as provided in OCGA § 15-11-94(b). Under that Code section, parental misconduct or inability may be found when (1) a child is deprived; (2) the cause of the deprivation is lack of proper parental care or control; (3) such deprivation is likely to continue or not likely to be remedied; and (4) continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the child. If there is clear and convincing evidence of parental misconduct or inability, OCGA § 15-11-94(a) then requires the court to consider whether terminating the parent's rights is in the best interest of the child, after considering the physical, mental, emotional, and moral condition and needs of the child, including the need for a secure and stable home.
(Footnote omitted.) In the Interest of H.D.T., 273 Ga.App. 863, 616 S.E.2d 196 (2005).
On appeal from an order terminating parental rights, this Court views the evidence in the light most favorable to the appellee and determines whether "any rational trier *908 of fact could have found by clear and convincing evidence that the natural parent's rights to custody have been lost." (Citation and punctuation omitted.) In the Interest of S.H., 251 Ga.App. 555(1), 553 S.E.2d 849 (2001). "We do not weigh the evidence and must defer to the trial judge as the factfinder." (Citation and punctuation omitted.) In the Interest of C.F., 251 Ga.App. 708, 555 S.E.2d 81 (2001).
So viewed, the evidence demonstrates that the DeKalb County Department of Family and Children Services ("DFCS") received a referral of neglect in May 2003 regarding then two-month-old E.J.E.J. initially entered shelter care on June 9, 2003. DFCS filed a deprivation petition on June 24, 2003, and the juvenile court conducted a hearing on July 2, 2003. The juvenile court subsequently adjudicated E.J. to be a deprived child, finding that the mother had an active neglect case in Randolph County, Alabama, and had left the state without giving notice of her whereabouts; the mother had a history of crack cocaine use, no employment, and no reported income; and the mother was living in a house without a refrigerator, stove, or furniture. The juvenile court placed E.J. in the temporary custody of DFCS and approved a reunification case plan requiring that the mother complete drug and parenting assessments, follow the assessments' recommendations, submit to random drug screens, and establish a stable home, among other things.
On May 27, 2004, DFCS moved to extend custody of DFCS for an additional year. Following a hearing, the juvenile court granted the motion, finding that the mother had not completed any goals under the reunification case plan and concluding that E.J. was a deprived child as defined in OCGA § 15-11-2(8)(A). The deprivation order and the order on motion for extension were not appealed, and the juvenile court subsequently took judicial notice of the orders in the termination proceedings.
On March 14, 2005, the Department filed its petition for termination of the mother's parental rights. The petition was heard before the juvenile court on July 7, 2005. The mother was present and represented by counsel.
The mother's caseworker testified that the mother had failed to comply with her reunification case plan in that she did not establish stable housing, demonstrate a source of income, or submit to drug and alcohol screening at DFCS'S request, other than one prior drug screen taken when the mother was in court. The mother did complete a psychological assessment and followed one of the recommendations, which was that she continue inpatient drug treatment. There were several gaps of time in which the mother had not worked on the case plan, and the mother's explanation to the caseworker was that she was "into her addiction." According to the caseworker, the mother had been addicted to crack cocaine for 15 years.
The mother visited with E.J. six times after he was taken into DFCS custody. She spent a total of four hours and fifteen minutes with the child over a twenty-five-month period. The caseworker testified that based on her experience working with families and children, the amount of contact between E.J. and the mother had been insufficient to create a bond between the two.
Dr. Jeannie Burnett testified that she had performed a psychological and parental fitness evaluation on the mother. Burnett diagnosed the mother with polysubstance dependence and a personality disorder with anti-social and narcissistic features. According to Burnett, the mother's condition could improve, but she was unsure of the mother's ability to tolerate therapy. Burnett was also unsure if the mother's condition would be detrimental to the overall development of a child. Burnett further testified that the mother's current pattern of behavior showed that she was just "doing what she needs to do to stay out of trouble."
The mother testified that during the two months preceding the hearing she had been enrolled in a residential drug treatment program called "Right Side Up," and that she intended to stay there over a year to complete the program. The mother's substance abuse counselor confirmed that the mother was participating in the program. The mother admitted to previously being involved with *909 drugs, including crack cocaine. According to the mother, she missed scheduled visitations with E.J. because she was too hung over, and she could not explain her behavior except for her drug addiction. The mother admitted stating that a court-ordered drug treatment program in Alabama "didn't work for me." Finally, she testified that she has not finished her reunification case plan because of her drug problem, and that she had not paid child support although she was buying drugs.
Evidence further showed that E.J. was placed with a foster-to-adopt family and refers to his foster parents as mommy and daddy, has bonded with the family, and was happy and healthy in that environment. According to the case worker, if E.J. was not adopted he could grow up in foster care, where he would risk developing behavioral and attachment problems and problems with social relationships.
After hearing the evidence, the juvenile court terminated the mother's parental rights to E.J. On appeal, the mother does not challenge the sufficiency of the evidence to establish that E.J. was deprived or that his deprivation was caused by a lack of proper parental care or control. She directs her arguments to the other two elements of parental misconduct or inability, contending that DFCS failed to show by clear and convincing evidence (i) that E.J.'s deprivation was likely to continue and not be remedied, and (ii) that continued deprivation was likely to cause serious harm to the child.
Clear and convincing evidence of a parent's present unfitness is required to terminate the rights of a parent in her natural child. In the Interest of A.M., 275 Ga.App. 630, 633(2), 621 S.E.2d 567 (2005). However, a juvenile court may consider the parent's past conduct in deciding whether a child's deprivation is likely to continue. In the Interest of T.B., 267 Ga.App. 484, 486(1), 600 S.E.2d 432 (2004). Further, "in considering past deprivations compared to present achievements, juvenile courts are entitled to assign much less weight to such assertions of sudden parental fitness when compared to the other evidence." (Citation and punctuation omitted.) In the Interest of D.D.B., 282 Ga.App. 416, 418(1), 638 S.E.2d 843 (2006). Here, evidence of the mother's long history of drug abuse, failure to complete her reunification case plan, and repeated willingness to place her drug addiction over her child's needs was sufficient to authorize the juvenile court to find by clear and convincing evidence that E.J.'s continued deprivation was likely to continue and not be remedied. See In the Interest of F.C., 248 Ga.App. 675, 678(1), 549 S.E.2d 125 (2001) (mother's failure to comply with reunification plan supported juvenile court's finding that deprivation was likely to continue); In the Interest of D.L.D., 248 Ga.App. 149, 153, 546 S.E.2d 11 (2001) (court may consider history of drug abuse in finding deprivation likely to continue).
The mother's reliance on In the Interest of R.U., 223 Ga.App. 440, 477 S.E.2d 864 (1996) is misplaced. In R.U. we determined that DFCS had failed to provide sufficient evidence that the children's deprivation was likely to continue and not be remedied. Id. at 442, 477 S.E.2d 864. In that case, the parents received family counseling and psychiatric care, the mother completed an alcohol and drug awareness program and failed to test positive for drug use for eight months, the mother completed a child care class, the father stopped drinking alcohol, and the parents maintained regular contact with their children. Id. at 440-441, 477 S.E.2d 864. In contrast, in this case the mother has not recently completed a drug treatment program, has not maintained regular contact with her child, and failed to submit to regular drug screening. That the mother will complete her current drug abuse treatment and will shoulder her parental responsibilities is supported by little more than her stated intention to do so. "The decision as to a child's future must rest on more than positive promises which are contrary to negative past fact." (Citations and punctuation omitted.) In the Interest of R.N., 224 Ga.App. 202, 205(2), 480 S.E.2d 243 (1997).
The mother further contends that there was no evidence presented to support the juvenile court's conclusion that E.J.'s continued deprivation was likely to cause serious harm to the child. We disagree. The mother's case worker testified that E.J. *910 risked developing behavioral and attachment problems if he were not adopted and grew up in foster care. See In the Interest of B.I.F., 264 Ga.App. 777, 781(1), 592 S.E.2d 441 (2003) (the juvenile court may consider caseworker's testimony regarding the need for permanency). Further, "[i]t is well settled that children need permanence of home and emotional stability or they are likely to suffer serious emotional problems." (Citation and punctuation omitted.) In the Interest of A.R.A.S., 278 Ga.App. 608, 615(2)(d), 629 S.E.2d 822 (2006). The evidence also demonstrated that E.J. was not bonded with his mother but had bonded with his foster-to-adopt family, and had adjusted well. "[W]here evidence shows no parental bond between parent and child, the child has adapted well to foster care, and the foster parents wish to adopt, this is sufficient to support the conclusion that continued deprivation is likely to harm the child." (Citation omitted.) Id. Compare In the Interest of B.F., 253 Ga.App. 887, 891-892, 560 S.E.2d 738 (2002) (uncontradicted testimony showed that the child had strong bond with his father, and there was no evidence that child risked harm if he did not find a permanent placement). Accordingly, the juvenile court was authorized to conclude that clear and convincing evidence showed that continued deprivation was likely to cause serious physical, mental, emotional, or moral harm to the child.
Evidence also supports the juvenile court's finding that termination of the mother's parental rights was in E.J.'s best interest. "The same factors that show the existence of parental misconduct or inability may also support the juvenile court's finding that terminating the parent's rights would be in the child's best interest." (Punctuation and footnote omitted.) In the Interest of R.S., 270 Ga.App. 810, 812, 608 S.E.2d 286 (2004). In light of the record, we conclude there was clear and convincing evidence to support the juvenile court's finding that termination of the mother's parental rights was in the child's best interest, considering his "physical, mental, emotional, and moral condition and needs . . ., including the need for a secure and stable home." OCGA § 15-11-94(a). See In the Interest of J.K., 239 Ga. App. 142, 146(1), 520 S.E.2d 19 (1999).
Judgment affirmed.
BLACKBURN, P.J., and RUFFIN, J., concur.