A11A1756. IN THE INTEREST OF H. J., a child.
(721 SE2d 197)

MCFADDEN, Judge.

The father of H. J. appeals the order finding that H. J. is deprived and awarding his custody to the Department of Family and Children Services ("DFCS"). The father argues that the evidence does not show that his son is presently deprived. He also argues that the juvenile court abused its discretion by denying the father any

visitation with his son. Because we find that the clear and convincing evidence shows present deprivation and that the juvenile court did not abuse its discretion in regard to visitation, we affirm.

On February 19, 2010, when H. J. was about 14½ years old, DFCS received a referral alleging that the father had shot two dogs, was involved in an abusive relationship with his girlfriend, frequently drank alcohol to the point of intoxication, and had pointed a gun at the child. A social services supervisor interviewed H. J. that day, and the child told her that his father had pointed a .22 rifle at him because he got dirt in the father's truck. He confirmed that the father had shot the dogs, which resulted in the father's arrest for animal cruelty. He said that the father kept him out late on school nights, taking him hunting and to a bar, so that he had trouble staying awake in school. He confirmed the father's excessive drinking, and said that his father drove while intoxicated with him in the vehicle. He said that he had witnessed the father being abusive to his girlfriend. He also said that he was afraid of his father and did not want to see him or go home with him.

H. J. went to live with a maternal aunt for the remainder of the school year and then was placed in the custody of his former stepmother, the father's ex-wife. The child was adjudicated to be deprived on July 22, 2010. In the deprivation order, the court prohibited the father from having contact with the child until the child's counselor deemed it appropriate to begin joint counseling sessions with the father and child. The court ruled that the father and son must complete at least 12 joint counseling sessions before the father could have unsupervised contact with his son. It ordered H. J. to continue to participate in individual and family counseling. The court directed the father to complete a family services plan, which required the father, among other things, to complete psychological services associated with anger management, alcohol dependence, depression and anxiety.

On November 18, 2010, the court conducted a hearing at which the therapist who had been counseling the father and H. J. testified. The therapist testified that he had recommended H. J. and his father begin family counseling but H. J. rescheduled the first session, originally scheduled for November 1, and did not show up for the second session, scheduled for November 8. The therapist testified that the father had been undergoing random alcohol screens, that he had provided proof that he completed anger management treatment, and that he continued to provide proof of participating in 12-step meetings; the certificates of completion were introduced at the hearing. At the end of the hearing, the court ruled that the child needed a different therapist, as the current therapist was aligned with the father, and that the new therapist would decide when joint

family therapy would begin. The court removed the child from his former stepmother's custody and placed him in the custody of DFCS for reasons that are not at issue here.

DFCS filed a "petition deprivation/protective order." The juvenile court conducted a hearing on the petition December 17, 2010, and, on January 20, 2011, entered the order from which the father filed his notice of appeal. According to that order, the father stipulated to findings of fact that led to the initial finding of deprivation. He also stipulated that the court had previously determined that he must petition for return of custody once he had completed his case plan and that supervised visitation with H. J. would resume only at the recommendation of the child's therapist. He stipulated that as of November 18, 2010, he had not cured the initial deprivation. The juvenile court found that the child had not started sessions with a new therapist, whom the court had previously indicated it wanted to make the decision as to when family therapy should begin.

1. The father asserts that there is no evidence that his son is presently deprived, given that the father has completed all of his case plan goals. He asserts that the only allegation of deprivation that he has not cured is that the child does not want to return to the father's home.

> On appeal, we review the evidence in the light most favorable to the juvenile court's judgment to determine whether any rational trier of fact could have found by clear and convincing evidence that the child was deprived. We do not weigh the evidence or determine the credibility of witnesses; rather, we defer to the trial court's factfinding and affirm unless the appellate standard of review is not met.

(Citations and punctuation omitted.) *In the Interest of I. W.*, 304 Ga. App. 225, 229 (3) (695 SE2d 739) (2010). OCGA § 15-11-2 (8) (A) provides that a child is deprived if he or she "[i]s without proper parental care or control, subsistence, education as required by law, *or other care or control necessary for the child's physical, mental, or emotional health* or morals." (Emphasis supplied.)

> That definition focuses upon the needs of the child regardless of parental fault. The deprivation petition is brought on behalf of the child and it is the child's welfare and not who is responsible for the conditions which amount to deprivation that is the issue.

(Citation and punctuation omitted.) *In the Interest of R. C. H.*, 307

Ga. App. 774, 777 (1) (706 SE2d 686) (2011).

The father argues that the only condition that the juvenile court found to be currently depriving the child was the child's preference not to return to the father's custody. On the contrary, the juvenile court found that the child was deprived because he and his father had not completed family counseling. Although the father argues his completion of the case plan goals eliminated the original causes of the deprivation, the failure to complete family counseling continued the deprivation.

Clear and convincing evidence authorized the juvenile court to find that the child was currently deprived because he was without the "care . . . necessary for [his] . . . mental[ ] or emotional health." OCGA § 15-11-2 (8) (A). See *In the Interest of D. Q.*, 307 Ga. App. 121, 125 (704 SE2d 444) (2010) ("[T]he juvenile court correctly found that the evidence of the children's deprivation was clear and convincing in that the evidence demonstrated that [the children] were not receiving adequate support for their mental health issues."); *In the Interest of N. Y.*, 246 Ga. App. 723, 726 (542 SE2d 137) (2000) (clear and convincing evidence showed that children's "deprivation would likely continue or would not be remedied in the absence of an extension of temporary legal custody in DFCS to permit the father to complete individual counseling and to participate in family counseling, as appropriate").

2. The father alleges that the juvenile court erred by prohibiting any visitation simply because the child desired not to be united with his father. This mischaracterizes the juvenile court's order. In fact, the juvenile court required the father and son to engage in family counseling together, but the court ordered the child's therapist to verify first that the child was ready, given their history.[1] The court explicitly ordered that a status review hearing would be held within eight days of its order at which time the court would "then hear from [H. J.'s] therapist and [would] probably set a time certain to initiate family therapy." The trial court did not abuse its discretion by delaying family therapy until H. J. was ready. See *In the Interest of S. C.*, 248 Ga. App. 819, 820-821 (2) (547 SE2d 611) (2001).

*Judgment affirmed. Phipps, P. J., and Andrews, J., concur.*

DECIDED DECEMBER 8, 2011.

*Justin B. Grubbs*, for appellant.

*Samuel S. Olens, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Elizabeth M. Williamson, Assistant*

---

[1] Because the father does not enumerate it as error, we do not reach the issue of the propriety of the trial court's delegating this decision to the therapist.

*Attorney General, Tammy M. Griner, Charles B. O'Neill, Jr.*, for appellee.