A06A1822. IN THE INTEREST OF J. S., a child.
(641 SE2d 682)

MIKELL, Judge.

The Georgia Department of Juvenile Justice ("DJJ") appeals the Juvenile Court of Baldwin County's denial of its motion to certify medical expenses in the amount of $4,568.50 incurred on behalf of a female juvenile detained at the Macon Regional Youth Detention Center ("RYDC") who presented to medical personnel with galactorrhea, or the spontaneous flow of milk from the breast in nonlactating women. For reasons that follow, we reverse the juvenile court's order.

The record reflects that on January 13, 2005, the Juvenile Court of Baldwin County ordered 15-year-old J. S. taken into custody and delivered to the Sandersville RYDC after she failed to appear for an adjudication hearing arising out of a petition of delinquency, alleging various traffic offenses and a probation violation. On March 17, 2005, J. S. was placed in the temporary custody of DJJ pursuant to an order of detention and placed at the Macon RYDC pending adjudication and disposition of the delinquency petition.[1] Two months later, and prior to adjudication, J. S. presented to medical personnel at the Macon RYDC with galactorrhea. According to the nurse practitioner who evaluated J. S. at the Macon RYDC, the condition is life-threatening.[2]

---

[1] According to the juvenile court, J. S. was detained at the Macon RYDC presumably due to overcrowding at the Sandersville facility.

[2] Questioning by counsel for the county elicited the following colloquy:
[COUNSEL]: Now, you say that this was a life threatening condition in your opinion as a nurse practitioner.
[NURSE]: Yes.
[COUNSEL]: Was it something that was threatening her life immediately or was it something that could cause problems on down the road, months down the road, or do you know?

When an ultrasound performed at the Macon RYDC revealed nothing, doctors ordered that J. S. undergo further diagnostic testing, including an MRI, at Coliseum Medical Center in Macon. The MRI revealed a small tumor on the pituitary gland. DJJ was billed $4,568.50 for the diagnostic tests. On June 2, 2005, J. S. was committed jointly to DJJ and the Baldwin County Department of Family and Children Services ("DFCS"). On August 15, 2005, DJJ filed a motion to certify medical expenses pursuant to OCGA § 15-11-8, seeking payment by Baldwin County of the medical expenses incurred at Coliseum Medical Center. The juvenile court denied the motion, finding that OCGA § 15-11-8 (a) (5) does not require the county to pay medical expenses incurred by children held at DJJ's detention facilities and that medical expenses are not included within the definition of "subsistence."

1. OCGA § 15-11-8 (a) states that

> [t]he following expenses shall be a charge upon the funds of the county upon certification thereof by the court: (1) The cost of medical and other examinations and treatment of a child ordered by the court; (2) The cost of care and support of a child committed by the court to the legal custody of an individual or a public or private agency other than the [DJJ], but the court may order supplemental payments, if such are necessary or desirable; . . . (5) The expense of service of summons, notices, and subpoenas, travel expenses of witnesses, transportation, subsistence, and detention of the child, and other like expenses incurred in the proceedings under this chapter.

In contending that the juvenile court erred in denying its motion to certify funds, DJJ argues that pre-adjudication medical expenses are to be charged to the county upon certification by the juvenile court because, though detained by DJJ, the youth is in the custody of the juvenile court. Baldwin County argues that OCGA § 15-11-8 is not intended to be a vehicle whereby one governmental entity can transfer its duty to pay for expenses incurred in juvenile proceedings to another. Because we find that the word "subsistence," as provided in

---

[NURSE]: It could be down there or down the road, so, I mean it's hard to say for me. Once something is in the brain, so.
[COUNSEL]: Okay.
[NURSE]: I mean, I'm not God, so I cannot really.
[COUNSEL]: I understand. Thank you.

OCGA § 15-11-8 (a) (5), includes emergency medical treatment, we hold that the juvenile court erred in refusing to certify the medical bills.

Though it appears several times throughout the Code,[3] the word "subsistence" is not defined anywhere in the Code. "In construing a statute, we must look at the legislative intent, keeping in view at all times the old law, the evil, and the remedy and give ordinary 'signification' to all words."[4] The general purpose of Title 15, Chapter 11 is to protect the well-being of children.[5] In keeping with this purpose, we find that the word "subsistence," as provided in OCGA § 15-11-8, includes emergency medical treatment. Our interpretation is supported by a 2002 opinion of Georgia's Attorney General.[6] The appellate courts of Kansas have also interpreted somewhat similar statutory language.[7] While the opinions of the Attorney General and authority from other jurisdictions are not binding on our appellate courts, they can be considered persuasive.[8] In this case, the Attorney General's opinion interpreting OCGA § 15-11-8 is in accord with our decision.[9] Finally, Black's Law Dictionary uses "subsistence" as a synonym for "necessaries," which include "whatever food, medicine, clothing, shelter, and personal services are [usually] considered reasonably essential for the preservation and enjoyment of life, to the extent that a person having a duty of protection must furnish them."[10] Accordingly, as the record reflects that J. S. was diagnosed with a life-threatening condition that required emergency medical treatment, the juvenile court erred in denying DJJ's motion to certify funds.

2. In light of our finding in Division 1, DJJ's remaining enumerations of error are moot.

*Judgment reversed. Blackburn, P. J., and Adams, J., concur.*

---

[3] See, e.g., OCGA §§ 15-11-2 (8) (A); 42-5-51 (d).

[4] (Punctuation and footnote omitted.) *Edwards v. Dept. of Children & Youth Svcs.*, 271 Ga. 890, 891 (525 SE2d 83) (2000).

[5] See OCGA § 15-11-1.

[6] Op. Atty. Gen. 02-6 (issued September 24, 2002).

[7] *Shelter Mut. Ins. Co. v. Williams*, 248 Kan. 17, 30 (804 P2d 1374) (1991) (construing statutory language "care and custody" of a juvenile to include "things such as food, shelter, education, and ordinary medical care"); *Shelter Mut. Ins. Co. v. Williams*, 788 P2d 1344 (Kan. Ct. App. 1990) ("[h]aving examined [Kansas Statutes Annotated] 38-1616, we are of the opinion that, arguably, expenses of the care and custody of a juvenile offender would include such expenses as the cost of food, shelter, education, and ordering medical care").

[8] See *Dept. of Transp. v. Meadow Trace, Inc.*, 274 Ga. App. 267, 270 (2) (617 SE2d 246) (2005); *Denney v. Coweta County*, 232 Ga. App. 440, n. 2 (502 SE2d 297) (1998).

[9] Op. Atty. Gen. 02-6 (issued September 24, 2002).

[10] Black's Law Dictionary (8th ed. 2004).

DECIDED FEBRUARY 6, 2007 — 

Thurbert E. Baker, Attorney General, Dennis R. Dunn, Deputy Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Michelle Townes, Assistant Attorney General, for appellant.

Lumley & Howell, Jerry A. Lumley, for appellee.

