652 S.E.2d 547 (2007)
In the Interest of J.S., a child.
No. S07G0903.
Supreme Court of Georgia.
October 29, 2007.
Jerry A. Lumley, Lumley & Howell, Macon, for Appellant.
Michelle Townes, Asst. Atty. Gen., Thurbert E. Baker, Atty. Gen., Dennis R. Dunn, Asst. Atty. Gen., Shalen S. Nelson, Asst. Atty. Gen., for Appellee.
MELTON, Justice.
We granted certiorari in this case to determine whether OCGA § 15-11-8(a) requires either a county or the Department of Juvenile Justice (Department) to pay for emergency medical treatment for a juvenile temporarily placed by a juvenile court into the Department's custody while that juvenile's adjudication and the disposition of her delinquency petition remains pending. After considering this issue, the Court of Appeals found that a county is responsible for this emergency medical treatment. See In the Interest of J.S., 283 Ga.App. 448, 641 S.E.2d 682 (2007). For the reasons set forth below, we affirm.
The facts are not disputed. J.S., who was fifteen years old at the time, failed to appear for an adjudication hearing relating to a petition of delinquency, and, as a result, on March 17, 2005, the Juvenile Court of Baldwin County issued an order that she be taken into custody for her own protection. See OCGA § 15-11-46. Although the juvenile court retained legal custody over J.S., it issued an order placing J.S. into the temporary physical custody of the Department for the period of time that her adjudication and disposition of the delinquency petition were pending. Approximately two months later, while still in the temporary physical custody of the Department, J.S. began suffering from galactorrhea, which some testimony showed could be related to life-threatening conditions. A number of medical procedures were performed to discover the cause of the problem. Ultimately, medical resonance imaging *548 (MRI) revealed that J.S. was suffering from a tumor on her pituitary gland. The Department was billed $4,568.50 for J.S.'s treatment, tests, and procedures, and it filed a motion requesting the juvenile court to certify the expenses for payment by Baldwin County in accordance with OCGA § 15-11-8(a)(5). The juvenile court denied the motion, and the Court of Appeals reversed.
1. The question now before us, in its simplest terms, is who must pay the expense of emergency medical procedures for a juvenile who is in the legal custody of the juvenile court of a particular county but has been placed in the physical custody of the Department. To answer this question, we must turn to statutory authority. OCGA § 15-11-8 provides:
(a) The following expenses shall be a charge upon the funds of the county upon certification thereof by the court: (1) The cost of medical and other examinations and treatment of a child ordered by the court . . . (5) The expense of service of summons, notices, and subpoenas, travel expenses of witnesses, transportation, subsistence, and detention of the child, and other like expenses incurred in the proceedings under this chapter.
On its face, this statute does not directly address the question at hand. However, the statute does provide that the expense of "subsistence . . . and other like expenses incurred . . ." shall be charged to the county following certification. We agree with the Court of Appeals in its decision below that this category of expenses includes emergency medical treatment like that provided to J.S. in this case.[1] This finding is supported by three sources: the common meaning of the term "subsistence," the manner in which the term has been previously interpreted in other parts of our juvenile code, and one of the fundamental rationales underlying the juvenile code itself.
First, although undefined in the statute and defined in slightly different ways by different outside sources, the term "subsistence" is commonly defined to cover the bare necessities required to preserve life, including necessary medical treatment.[2] Second, other provisions in our juvenile code support an interpretation of "subsistence" as encompassing emergency medical services. For example, under OCGA § 15-11-2(8), a child may be considered to be deprived if that child is "without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child's physical, mental, or emotional health or morals." This provision has often been interpreted to mean that at least the child's basic needs for subsistence must be met, including the provision of medical services. See, e.g., In the Interest of B.S., 283 Ga.App. 724(1)(b), 642 S.E.2d 408 (2007); In the Interest of D.T., 284 Ga.App. 336(1), 643 S.E.2d 842 (2007). Third, in drafting the juvenile code, the Legislature explicitly stated its purpose of protecting and restoring children whose well-being is threatened, see OCGA § 15-11-1(1). When these three sources are considered together, it leads to the conclusion that "subsistence," as used in OCGA § 15-11-8(5), must be interpreted to include emergency medical procedures. Any interpretation to the contrary would undermine the goal of providing immediate protection to threatened children in the legal custody of a county under the circumstances of this case. As a result, the juvenile court erred by denying the Department's motion to certify the expense of J.S.'s emergency medical treatment for payment by Baldwin County.
Judgment affirmed.
All the Justices concur.
NOTES
[1] Georgia's Attorney General reached a similar result in a 2002 opinion. See Op. Atty. Gen. 02-6 (issued September 24, 2002).
[2] For example, Black's Law Dictionary identifies things which are required for subsistence as "necessaries" which are "reasonably essential for the preservation and enjoyment of life." These necessaries may include food and medicine, among other things. Black's Law Dictionary (8th ed.2004).