681 S.E.2d 649 (2009)
In the Interest of A.G., a child.
No. A09A1170.
Court of Appeals of Georgia.
July 8, 2009.
Thurbert E. Baker, Atty. Gen., Joseph J. Drolet, Senior Asst. Atty. Gen., Destiny S. Washington, Asst. Atty. Gen., for appellant.
Melinda K. Wells, Karen G. Thomas, Lawrenceville, for appellee.
JOHNSON, Presiding Judge.
The issue in this appeal is which entity, Gwinnett County (the "County") or the state Department of Juvenile Justice (the "Department"), must pay for medical treatment for a juvenile temporarily placed by a juvenile court into the Department's custody while the adjudication and disposition of the juvenile's delinquency petition are pending. Under the circumstances presented in this case, the County is responsible for the costs of the medical treatment.
The undisputed facts show that A.G., a resident of Gwinnett County, was taken into custody on charges of obstruction of an officer, truancy and criminal trespass. Although the Gwinnett County juvenile court retained legal custody over A.G., it issued an order placing him in the temporary physical custody of the Department while the adjudication and disposition of the delinquency petition were pending.
While A.G. was still in the Department's temporary physical custody, he was involved in a fight and suffered a fracture of his right hand. A.G. went to the Department nurse for treatment. An x-ray was taken and faxed to a radiologist the same day. The radiologist faxed a report back that night, and the nurse reviewed the radiologist's report the next morning. At the direction of the Department's physician, the nurse scheduled an appointment for A.G. to see an outside orthopedist on the following day. In the meantime, the nurse practitioner wrapped A.G.'s hand for support. The assistant director of the Department's Regional Youth Detention Center testified that A.G. was referred for outside medical care because "[i]t was an emergency. He had a fracture. [And] he was in some pain."
The next day, the orthopedist examined A.G. and placed a cast on his fractured hand. The cast was damaged, and A.G. returned to the orthopedist six days later to have the cast repaired. The orthopedist's bill, which totaled $1,175, was sent to the Department.
The Department filed a motion requesting that the juvenile court certify the medical expenses for payment by the County in accordance with OCGA § 15-11-8(a)(5). *650 OCGA § 15-11-8(a) provides, in relevant part:
The following expenses shall be a charge upon the funds of the county upon certification thereof by the court: (1) The cost of medical and other examinations and treatment of a child ordered by the court ... (5) The expense of ... subsistence, and detention of the child, and other like expenses.
According to the Department, the medical expenses incurred in this case come within the "expense of ... subsistence" clause. The juvenile court denied the motion, and the Department filed this appeal.
1. The Department contends that the trial court erred in finding that A.G.'s medical expenses are not chargeable to the County as an expense of the juvenile's "subsistence." We agree with the Department.
Although "subsistence" is not defined in OCGA § 15-11-8(a), the term is commonly defined to cover the bare necessities required to preserve life, including necessary or emergency medical treatment.[1] And, in deciding whether the Department's provision of medical treatment to a juvenile comes within OCGA § 15-11-8(a)(5), the Supreme Court of Georgia has stated that a "child's basic needs for subsistence" include "the provision of medical services."[2]
In this case, the Department's lead nurse who examined A.G. testified that she had worked in an emergency room and that a fracture is
not an emergency in the term of life and death, but you cannot just wait days and days and days before you get someone seen for a fracture, because the bone will start calcifying, and if there's any displacement, then they're going to have to rebreak their hand or the bone that's broken.
She added that it is important to have a fracture treated within the first few days of the injury, and that the longer the child waits, the greater the chance that the nondisplaced fracture will become displaced. The nurse added that delaying treatment would result in more pain and the possibility that the hand (particularly on a growing child) would develop a deformity. The nurse then clarified that she had not referred to A.G.'s injury as a "true emergency" because he was not bleeding uncontrollably, having trouble breathing, having a seizure, or passing out. She continued, "you still cannot just wait and wait to treat the hand."
Although the testimony is not clear on this point, A.G. went to Department medical personnel for treatment of the fracture on either the day of or within two days of the injury.[3] Two days later, A.G. received needed treatment from an outside orthopedist. We hold that the provision of medical services to treat A.G.'s fractured hand was an emergency or necessary medical procedure that falls within the meaning of subsistence as provided in OCGA § 15-11-8(a)(5).[4]
The County urges that A.G. was not facing a life-threatening emergency and that the Department should have therefore obtained a court order for the medical expenses pursuant to OCGA § 15-11-8(a)(1) before seeking treatment. The County adds that the Department should have allowed the juvenile court to determine whether A.G.'s parents were able to pay for his treatment.[5]
Contrary to the County's argument, allowing the type of medical treatment provided in this case to be included in the definition of "subsistence" does not render OCGA § 15-11-8(a)(1) meaningless. In this particular case, there was evidence that the juvenile's injury needed to be treated within days and that a long delay could have compromised the child's health. While A.G.'s injury was *651 not a life-threatening emergency, the Supreme Court stated in In the Interest of J.S., as noted above, that "subsistence" encompasses "necessary medical treatment" and "the provision of medical services";[6] the Court did not limit the Code section's applicability to life-threatening emergencies. A.G.'s treatment was certainly medically necessary, and the timing of the treatment was important. As for A.G.'s parents being responsible for the charges, the statute permits the juvenile court to determine the parents' ability to pay and order them to reimburse the County for the medical costs.[7]
We point out that in drafting the juvenile code, the legislature explicitly stated its purpose of protecting and restoring children whose well being is threatened.[8] Were we to hold that "subsistence" does not include the provision of the necessary medical treatment provided in this case, we would undermine the legislature's goal of providing immediate protection to threatened children in the legal custody of the County.[9]
The juvenile court erred by denying the Department's motion to certify the expense of A.G.'s medical treatment for payment by the County.
2. In light of the foregoing, we need not address the Department's argument that the juvenile court erred in requiring a hearing on its motion to certify the medical expenses.
Judgment reversed.
ELLINGTON and MIKELL, JJ., concur.
NOTES
[1] In the Interest of J.S., 282 Ga. 623, 624, 652 S.E.2d 547 (2007).
[2] Id. at 625, 652 S.E.2d 547.
[3] The assistant director of the Department's Regional Youth Detention Center testified that he "believe[d]" A.G. injured his hand on February 17, 2007. The Department lead nurse who treated A.G. testified that she "think[s]" he was injured on February 19, 2007. There is no dispute that A.G. sought treatment from the Department on February 19, 2007, saw the orthopedist on February 21, 2007 and returned to have the cast repaired on February 27, 2007.
[4] See generally id.
[5] See OCGA § 15-11-8(b).
[6] In the Interest of J.S., supra.
[7] See OCGA § 15-11-8(b).
[8] In the Interest of J.S., supra (citing OCGA § 15-11-1(1)).
[9] See id.