A10A1141. IN THE INTEREST OF I. W., a child.
(695 SE2d 739)

JOHNSON, Judge.

I. W.'s biological father appeals the juvenile court order finding nine-year-old I. W. deprived and ordering that long-term custody be granted to the child's maternal aunt rather than to him. We find no error and affirm the juvenile court's order.

The record shows that I. W.'s mother died on December 1, 2008, and I. W. began residing with her maternal aunt when her mother entered the hospital shortly before that time. The mother had never married I. W.'s biological father, and the biological father had never legitimized I. W. In June 2009, the maternal aunt sought the assistance of the Clayton County Department of Family and Children Services (the "Department") in obtaining custody of I. W. On August 5, 2009, the Department filed a complaint and deprivation petition that alleged I. W.'s mother was deceased and her biological father had informed the Department he was unable to care for I. W. because his job required him to travel. The complaint further alleged that I. W. had resided with her maternal aunt since her mother's death and that the Department was "in the process of doing a home study on the home of the maternal aunt."

On September 10, 2009, I. W.'s father filed a motion to intervene in the juvenile court and noted that DNA results showed him to be the biological father of I. W. The juvenile court issued an order of legitimation on October 26, 2009. The father subsequently filed a petition to dismiss the deprivation hearing, asked that he not be required to attend the hearing because it was unnecessary, and asserted that "if no further notice [was] given, [he would] *not* be in attendance for this hearing as it [was] no longer necessary." The juvenile court did not grant the father's motion to dismiss or excuse his absence at the deprivation hearing. Nevertheless, the father failed to attend the deprivation hearing.

At the deprivation hearing, a Department caseworker testified that she contacted I. W.'s father after the aunt filed her petition for custody. The father indicated to the social worker that "he had no problem with" I. W. staying with her aunt because he was unable to care for her "because of his job." He further requested that his family be allowed to have continued involvement in I. W.'s life if the aunt was awarded custody. The social worker completed a study of the aunt's home and determined that the aunt appeared "to have the

ability to provide for [I. W.'s] needs." In fact, the aunt had moved to a new home which provided "more room."

The social worker also spoke with I. W. and her 14-year-old half-brother, who also lived with the aunt, "separately and privately," and each child informed her that they wished to continue living with their aunt. I. W. told the social worker that she had gotten close with her aunt and that she would do things with her aunt even when her mother was alive. The social worker recommended allowing the children to continue to reside with the aunt.

The aunt testified that I. W. and her half-brother had lived with her since their mother's hospitalization in November 2008, that she was able to provide for the children, and that she desired custody of them. She further testified that the father had only given her a total of $50 as financial assistance to help with I. W. during the time I. W. resided with her aunt. According to the aunt, I. W.'s father did not provide any support for I. W., did not attend the mother's funeral, and did not console I. W. during her mother's death. She recounted that I. W.'s father "had been in and out of" her life, in and out of jail, and was not even present when I. W. was born. When the aunt asked the father about his attempt to gain custody, he explained that "he wanted his sister to have [I. W.] because his sister and her husband ma[d]e a lot of money." The aunt stressed that I. W. was bonded with her half-brother, that the mother's will stated she wanted the children to remain together, and that the mother did not want I. W. to be with the father because he moved "from woman to woman and place to place." According to the aunt, the children "begged" her to let them live with her.

I. W.'s 19-year-old half-sister, who does not live with the aunt, testified that I. W. was happy living with her aunt and wanted to continue doing so. The half-sister saw I. W. nearly every day and believed the aunt provided I. W. with a good home. The half-sister also testified that the father had not provided I. W. with any support since their mother had died and that the mother was their sole caretaker before her death.

I. W.'s attorney reported to the juvenile court that I. W. wanted to stay with the aunt "very much." While I. W. wanted to have weekend visits with her father, she "definitely [did] not want to live with [him]." The attorney reported that the children were "well taken care of" at the aunt's house.

The juvenile court entered a written order finding that I. W. was deprived because her mother died without leaving a guardian or custodian to provide for I. W.'s needs, and the father failed to provide for I. W.'s needs and care. Finding that long-term custody to the aunt was in I. W.'s best interest, the juvenile court granted the aunt's custody petition.

1. The father first contends the trial court erred in "continuing with the November 9, 2009 [deprivation hearing] without notifying [him] of its intention." We disagree.

Although the father filed a motion to dismiss the custody petition in the juvenile court on October 28, 2009, and asked the court to grant the motion and excuse his attendance from the deprivation hearing, the juvenile court never ruled on the motion and did not excuse the father's attendance from the deprivation hearing. Merely asserting that a hearing is "no longer necessary" and that he will not appear unless "further notice is given" does not excuse a party from appearing in court when necessary to defend his position or argue his motion. The father, as movant, possessed the "responsibility to present sufficient evidence in support of his motion to dismiss."[1] He also bore the responsibility of presenting evidence at the deprivation hearing showing that I. W. was not deprived and that it was not in I. W.'s best interest to be placed in the aunt's custody.[2]

The father further argues that the juvenile court bore the burden of confirming his attendance at the hearing and that its failure to do so deprived him of the opportunity to establish facts in support of his position that I. W. was not deprived and should be in his custody. However, the father has cited to no authority, and we can locate no authority, holding that the juvenile court was obligated to inform the father that the deprivation hearing would continue as scheduled merely because the father requested the court to do so in his motion to dismiss. In fact, the Supreme Court of Georgia has ruled that a party who was "properly informed and had actual knowledge of the trial date" but "chose not to participate," was not deprived of his due process rights.[3] The father in the present case knew of the impending hearing and was afforded an opportunity to present his evidence and objections, but he chose not to participate.

Contrary to the father's argument, the superior court's order of legitimation in no way exempted him from participating in the deprivation case pending in the juvenile court. In fact, the juvenile court has exclusive original jurisdiction over juvenile matters and is the sole court to hear cases concerning any child who is alleged to be deprived.[4]

---

[1] *In the Interest of R. D. F.*, 266 Ga. 294, 297 (4) (466 SE2d 572) (1996).

[2] See *In the Interest of S. B.*, 287 Ga. App. 203, 209 (1) (a) (651 SE2d 140) (2007) (mother was responsible for making necessary arrangements to attend deprivation hearing); *Reliable Bonding Co. v. State*, 262 Ga. App. 280, 283 (585 SE2d 192) (2003) (party has a responsibility to attend hearings and show why judgment should not be entered).

[3] *Cormier v. Cormier*, 280 Ga. 693, 693-694 (1) (631 SE2d 663) (2006).

[4] OCGA § 15-11-28 (a) (1) (C); *In the Interest of J. P.*, 267 Ga. 492 (480 SE2d 8) (1997).

It is clear from the record that the father was fully aware of the juvenile court's deprivation hearing and that he elected not to participate in the hearing. Thus, he was not denied his right to due process, and this enumeration of error must fail.

2. The father asserts that the juvenile court used a wrong standard to award custody of I. W. to her aunt. Specifically, he argues that the juvenile court based its custody award to the aunt solely on the basis that the father had failed to provide substantial contribution to I. W.'s needs and care. However, the record shows that the juvenile court cited numerous reasons for its decision to award long-term custody of I. W. to her aunt, including: (a) the father failed to appear at the deprivation hearing despite receiving notice, (b) the father previously reported he was unable to care for I. W.'s financial needs and that he traveled a lot for business, (c) the father had been in and out of I. W.'s life, including a stretch of four to five years where even his own family did not know the father's whereabouts, (d) the father had never provided support for I. W., (e) the father did not attend the mother's funeral or provide emotional support to I. W. during her mother's death, (f) I. W. had lived with her aunt for over a year and wished to remain living with her, (g) I. W. and her half-brother are bonded and doing well at the aunt's home, and (h) the social study completed on the aunt's home was favorable. It is also worth noting that I. W. was born on August 9, 2000, yet the father did not legitimize her until October 26, 2009.

While there is a rebuttable presumption that it is in the best interest of a child that custody be awarded to a parent, that presumption may be overcome by showing that an award of custody to a third party is in the best interest of the child.[5] Moreover, OCGA § 19-7-1 (b) (3) provides that parental power shall be lost by the failure to provide necessaries for the child or abandonment of the child. The record supports the juvenile court's decision that granting long-term custody to I. W.'s aunt is in her best interest.[6]

3. The father contends the trial court erred in failing to use the clear and convincing evidence standard in depriving him of his parental rights to I. W. We find no error.

Under Georgia law, a deprived child includes a child who "[i]s without proper parental care or control, subsistence, education as

---

[5] *Jones v. Burks*, 267 Ga. App. 390, 392 (599 SE2d 322) (2004).

[6] See *Tucker v. Dimpfl*, 143 Ga. App. 545, 546 (2) (239 SE2d 215) (1997) (father had abandoned children by reason of his lack of interest, failure to furnish love and affection without good reason to show why he could not, and the failure to supply material support for a period of more than four years).

required by law, or other care or control necessary for the child's physical, mental, or emotional health or morals" or who has been abandoned by his or her parents.[7] These definitions focus on the needs of the child, regardless of parental fault.[8] The issue of whether the father had, and would, provide proper parental care and control for I. W. and whether he abandoned I. W. were the chief inquiries presented in the deprivation proceeding.[9]

On appeal, we review the evidence in the light most favorable to the juvenile court's judgment to determine whether any rational trier of fact could have found by clear and convincing evidence that the child was deprived.[10] We do not weigh the evidence or determine the credibility of witnesses; rather, we defer to the trial court's factfinding and affirm unless the appellate standard of review is not met.[11] Though the words "clear and convincing evidence" were not stated in the juvenile court's order in the present case, "the trial judge is presumed to know the law and presumed to faithfully and lawfully perform the duties devolved upon it by law."[12] And this Court will not presume that the trial court committed error where that fact does not affirmatively appear.[13]

Here, the evidence clearly and convincingly demonstrated that the father had physically, mentally, and emotionally neglected I. W.[14] He had been "in and out" of her life, was completely absent from her life for extended periods of time, chose not to legitimize her for nine years, and failed to emotionally support her during her mother's death. "The decision as to a child's future must rest on more than positive promises which are contrary to negative past fact."[15] The evidence supports the trial court's finding of deprivation.

*Judgment affirmed. Miller, C. J., and Phipps, P. J., concur.*

DECIDED MAY 27, 2010.

*Ruby L. Knight*, for appellant.

---

[7] OCGA § 15-11-2 (8) (A), (C).

[8] See *In the Interest of A. B.*, 289 Ga. App. 655, 656 (1) (658 SE2d 205) (2008).

[9] See *In the Interest of J. V.*, 241 Ga. App. 621, 625-627 (526 SE2d 386) (1999).

[10] See *In the Interest of S. S.*, 232 Ga. App. 287, 289 (501 SE2d 618) (1998).

[11] Id.

[12] (Citations and punctuation omitted.) *In the Interest of A. L. L.*, 211 Ga. App. 767, 770 (5) (440 SE2d 517) (1994).

[13] Id.

[14] See OCGA § 15-11-94 (b) (4) (B) (v).

[15] (Citations and punctuation omitted.) *In the Interest of D. B. C.*, 292 Ga. App. 487, 496 (1) (c) (664 SE2d 848) (2008).

*Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Elizabeth M. Williamson, Assistant Attorney General, Toni G. McDowell, Jemma Moses*, for appellee.