**SECOND DIVISION**
**ANDREWS, P. J.,**
**MILLER and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**June 25, 2015**

# In the Court of Appeals of Georgia

A15A0239. IN THE INTEREST OF A. H., a child.

BRANCH, Judge.

A. H. appeals from an order of the juvenile court of Douglas County, which granted the State's request for a 48-hour continuance of A. H.'s adjudicatory hearing. A. H. contends that the juvenile court erred in granting the motion for a continuance because it failed to consider the factors set forth in OCGA § 15-11-110 (a) and because the State failed to show good cause for a continuance. For reasons explained more fully below, we vacate the order of the juvenile court granting the continuance and remand for a determination of whether, under the circumstances of this case, the reason proffered by the State for a continuance constituted good cause for delaying the adjudicatory hearing.

The relevant facts are undisputed and the record shows that on or about May 2, 2014, a then 16-year old A. H. was arrested following a police chase of a stolen car in Douglas County. According to the report of the investigating officer, during the chase, the driver of the stolen car rammed a police vehicle and law enforcement ended the chase by performing a precision immobilization technique[1] on the stolen car. At that point, all four occupants of the car, including A. H., abandoned the vehicle and fled on foot. A. H., who had been seated in the front passenger seat, was holding a pistol as he exited the vehicle. When he raised the pistol slightly, he was shot and injured by a Douglas County Deputy. After police apprehended A. H., he was taken to Grady Hospital for treatment and was subsequently placed in detention on May 6, 2014.

On May 7, 2014, the juvenile court held the detention hearing required by OCGA § 15-11-472.[2] A probation officer with the Bibb County Department of

---

[1] This technique, also known as a PIT maneuver, is a tactic by which a pursuing car can cause a fleeing car to turn sideways. This maneuver usually causes the driver of the fleeing car to lose control of his vehicle and come to a stop.

[2] Whenever a juvenile defendant is placed in preadjudication custody, OCGA § 15-11-472 requires the juvenile court to hold a hearing on the issue of whether detention should be continued prior to adjudication. Such a hearing must take place within two business days after a juvenile is taken into custody without an arrest warrant and must take place within five business days after a juvenile is taken into custody pursuant to an arrest warrant. OCGA § 15-11-472 (a).

Juvenile Justice ("DJJ") and a case manager with the Bibb County Department of Family and Children Services ("DFACS") were present at that hearing, and they informed the court that A. H. had been placed in the legal custody of DFACS at some time prior to the incident in question and that he was currently in the restrictive custody of DJJ. At the outset of the hearing, the prosecutor asked that A. H.'s detention be continued. Both the case manager and the probation officer concurred in this request. The probation officer explained that even in the absence of the current charges, continued detention would be required because A. H. had been reported as a runaway from the DJJ group home where he had been placed. The court stated that in light of the evidence presented, including the hold on A. H. as a result of his current committal to DJJ, probable cause existed for A. H.'s continued detention.[3]

On May 9, 2014, the State filed a delinquency petition as to A. H., charging him with theft by receiving, theft by taking, fleeing a police officer, and possession of a firearm during the commission of a felony. The trial court scheduled an

---

[3] A. H. was not represented by an attorney at the detention hearing because the circuit public defender's office had a conflict resulting from its representation of another of the juveniles that had been riding in the stolen car with A. H. On appeal, however, A. H. does not challenge the juvenile court's finding that probable cause existed for his continued detention.

adjudicatory hearing for May 19, 2014, and it provided both the DJJ probation officer and the DFACS case manager with notice of this fact.

At the beginning of the May 19 proceeding, a representative of the Douglas County district attorney's office moved for a 48-hour continuance of the adjudicatory hearing. In support of this request, the district attorney's office stated that it needed additional time to review the case and decide whether to file a motion to transfer the case to superior court, where A. H. would be tried as an adult. Counsel for A. H. objected to a continuance and stated that A. H. was prepared to admit to the charges. The juvenile court, however, refused to take an admission from A. H., noting that Bibb County DFACS was A. H.'s legal custodian and that no DFACS representative had appeared at the hearing. The court then explained that it could not "take an admission from a child without their legal custodian being here." A. H.'s attorney argued that A. H. was in the joint legal custody of both DFACS and DJJ; that the probation officer from Bibb County DJJ was present; and that the presence of one legal custodian was sufficient to allow the adjudicatory hearing to proceed. To support this argument, the lawyer for A. H. requested permission to call the probation officer as a witness. The juvenile court responded that A. H. was "not in the legal custody of DJJ . . . That's not a legal custodial placement." The court then indicated

4

that it would allow the probation officer to testify, but stated that if the probation officer testified that DJJ had legal custody of A. H., she would be "incorrect," as DJJ "do[es] not maintain legal custody of a child."

A. H.'s lawyer then called the probation officer to the stand, at which point the juvenile court directed the attorney to "narrowly ask your questions, because I already know the legal and proper answer." When asked whether DJJ had legal custody of A. H., the probation officer responded that she thought both DJJ and DFACS had legal custody of A. H. and that it was her "understanding" that DJJ was "one of" A. H.'s legal custodians. The juvenile court rejected the probation officer's testimony, declaring, "I know [ ] the answer. . . . I have to have DFACS here" before proceeding with the adjudicatory hearing. The court then granted a 48-hour continuance and ordered A. H.'s further detention.

On May 21, 2014, the State filed a motion to transfer the case to superior court. Later that day, the juvenile court convened the adjudicatory hearing, at which both the DFACS case manager and the DJJ probation officer appeared. In light of the motion to transfer, however, the court declined to proceed with the adjudication hearing. Instead, it scheduled a hearing on the motion to transfer for June 23, 2014,

and entered an order requiring a mental health evaluation of A. H.[4] The court also ordered the continued detention of A. H.

On June 4, 2014, A. H. applied for a certificate of immediate review of the juvenile court's grant of the State's motion for a continuance. The lower court issued the requested certificate and this Court subsequently granted A. H.'s application for an interlocutory appeal.

1. In his first claim of error, A. H. argues that the juvenile court erred when, in granting the request for a continuance, it failed to consider the factors set forth in OCGA § 15-11-110 (a).[5] This statutory provision, however, is inapplicable to the

---

[4] Georgia law provides that before hearing a motion to transfer, the juvenile court must determine, inter alia, that the child in question "is not committable to an institution for the developmentally disabled or mentally ill." OCGA § 15-11-561 (a) (2).

[5] That code section provides:
Upon request of an attorney for a party, the court may continue any hearing under this article beyond the time limit within which the hearing is otherwise required to be held; provided, however, that no continuance shall be granted that is contrary to the interests of the child. In considering a child's interests, the court shall give substantial weight to a child's need for prompt resolution of his or her custody status, the need to provide a child with a stable environment, and the damage to a child of prolonged temporary placements.

current case. OCGA § 15-11-110, which is found in Article 3 of the Juvenile Code,

applies to dependency proceedings and not to delinquency proceedings. See OCGA

§ 15-11-100 (1) (the purpose of Article III is "[t]o assist and protect children whose

physical or mental health and welfare is substantially at risk of harm from abuse,

neglect, or exploitation and who may be further threatened by the conduct of others

by providing for the resolution of dependency proceedings in juvenile court.")

Accordingly, A. H.'s claim of error based on the juvenile court's failure to apply

OCGA § 15-11-110 (a) is without merit.

2. Continuances in delinquency proceedings are governed by OCGA § 15-11-478, which provides that a "continuance shall be granted only upon a showing of

good cause and only for that period of time shown to be necessary by the moving

party at the hearing on the motion. Whenever any continuance is granted, the facts

which require the continuance shall be entered into the court record."[6] As the

statutory language indicates, the question of whether good cause exists for a

continuance is a factual one, "which must be judged according to the particular

---

[6] The good cause standard for granting a continuance did not exist under the prior Juvenile Code. Rather, until the new juvenile code became effective, the decision to grant a continuance was within the discretion of the juvenile court. See *In Interest of R. D. F.*, 266 Ga. 294, 295 (1) (466 SE2d 572) (1996); *In the Interest of A. S.*, 293 Ga. App. 710, 711 (1) (667 SE2d 701) (2008).

7

circumstances of the case." *Scriven v. State*, 330 Ga. App. 826, 827 (769 SE2d 569) (2015) (because the statute governing requests to examine sealed adoption records did not define the term "good cause," the existence of good cause was a factual question) (citation omitted).

In this case, the court stated on the record that it was finding good cause for a continuance for two reasons. First, the court stated that it could not take an admission from A. H. without his legal custodian being present. The court then stated that, as a matter of law, DJJ did not have legal custody of A. H.[7] Neither of these findings is correct.

Although the State argues otherwise, under the current juvenile code, the parent, guardian, or legal custodian of an allegedly delinquent child is not a party to a delinquency proceeding; the only parties are the State and the allegedly delinquent child. OCGA § 15-11-474 (a) ("[a]n alleged delinquent child and the state shall be

---

[7] To the extent that A. H. is arguing that the juvenile court's failure to set forth these findings in writing requires us to conclude that no good cause existed for the continuance, we find that argument to be without merit. As the plain language of OCGA § 15-11-478 makes clear, the juvenile court is not required to enter a written order containing factual findings every time it grants a continuance. Rather, the court just has to make a factual finding as to good cause on the record; thus, the required factual findings may be pronounced orally at a hearing that is being transcribed.

parties at all stages of delinquency proceedings").[8] Although not a party, the parent, guardian, or legal custodian of any child who is the subject of a delinquency petition has "the right to notice, the right to be present in the courtroom, and the opportunity to be heard at all stages of [the] delinquency proceedings." OCGA § 15-11-474 (b).[9] Nothing in the code, however, provides that an adjudicatory hearing may not go forward if the child's parent, guardian, or legal custodian declines to attend the hearing. Thus, so long as a child's legal custodian is afforded his right to notice of all delinquency proceedings, he may waive his right to be present and to be heard at those proceedings. See *Kesterson v. Jarrett*, 291 Ga. 380, 385 (2) (b) (728 SE2d 557) (2012) ("[l]ike most other rights, the right to be present may be waived or forfeited by a party"); *In the Interest of I. W.*, 304 Ga. App. 225, 227 (1) (695 SE2d 739) (2010) (father could not assert error based on fact that juvenile court proceeded with a deprivation hearing despite the father's absence; the father "knew of the impending

---

[8] Compare *Sanchez v. Walker County Dept. of Family and Children Services*, 237 Ga. 406, 410 (229 SE2d 66) (1976) ("the [1971 Juvenile] Code recognizes that the parent is a 'party' to proceedings involving his child") (interpreting Ga. Code Ann.§ 24A-2001 (a) (1971)), disapproved on other grounds, *In the Interest of R. D. F.*, 266 Ga. 294, 296 (3) (466 SE2d 572) (1996).

[9] Similarly, DJJ is also entitled to notice of the disposition hearing. OCGA § 15-11-474 (c).

hearing and was afforded an opportunity to present his evidence and objections, but he chose not to participate" and thereby waived his right to be heard). A waiver of such rights occurs where, as here, a legal guardian who has received notice of a delinquency hearing elects not to appear at that proceeding. *I. W.*, 304 Ga. App. at 227 (1). See also *Cormier v. Cormier*, 280 Ga. 693, 694 (1) (631 SE2d 663) (2006) (husband in a divorce proceeding waived his right to be present and to be heard at trial where he "was properly informed and had actual knowledge of the trial date, but . . . chose not to participate"); *In the Interest of A. G. I.*, 246 Ga. App. 85, 86 (1) (539 SE2d 584) (2000) (despite the fact that the mother was a party to the proceeding to terminate her parental rights, she could nevertheless "waive the right to be present during trial proceedings by voluntarily absenting herself from the court") (footnote omitted). Accordingly, given that DFACS waived its right to be present and to be heard at the adjudicatory hearing, the trial court erred when it found that it could not take A. H.'s admission without A. H.'s legal guardian being present.[10]

---

[10] We are not holding that the absence of a child's parent, guardian, or legal custodian could never constitute good cause for a continuance. We are holding only that the trial court erred when it found that despite A. H.'s expressed desire to enter an admission, the court could not, as a matter of law, accept that admission in the absence of A. H.'s legal custodian.

The trial court also erred when it found that DJJ did not have legal custody of A. H. The juvenile code defines "legal custodian" as including "[a] public or private agency or other private organization licensed or otherwise authorized by law to receive and provide care for a child to which legal custody of such child has been given by order of a court." OCGA § 15-11-2 (42) (B). Among the rights granted to a legal custodian are

> the right to physical custody of a child, the right to determine the nature of the care and treatment of such child, including ordinary medical care, and the right and duty to provide for the care, protection, training, and education and the physical, mental, and moral welfare of such child, subject to the conditions and limitations of the [custody] order. . . .

OCGA § 15-11-30. Given these statutory provisions, we must conclude that DJJ is a legal custodian of any juvenile committed to its restrictive custody following a delinquency adjudication. Such custody results from a court order, gives DJJ the right to physical custody of the child, and obligates DJJ to provide the child with care (including medical care), protection, training, and education.

Here, the record shows that prior to his arrest on the current charges, A. H. had been adjudicated delinquent, committed to DJJ, and placed in restrictive custody. See OCGA § 15-11-2 (64) ("'[r]estrictive custody' means in the custody of DJJ for

11

purposes of housing in a secure residential facility or nonsecure residential facility").

At that time, DJJ became a legal custodian of A. H. See *Dept. of Human Resources v. Johnson*, 264 Ga. App. 730 (592 SE2d 124) (2003) (noting that a juvenile offender in restrictive custody was "in the joint legal custody of DJJ and . . . DFACS") (punctuation omitted); OCGA § 15-11-602 (c) (1), (d) (1) (a juvenile court dispositional order committing a delinquent child to restrictive custody must provide that the child is "placed in DJJ custody"). See also *In the Interest of J. S.*, 283 Ga. App. 448, 449-450 (641 SE2d 682) (2007) (DJJ does not become a child's legal custodian until the child is committed to DJJ restrictive custody following an adjudication of delinquency).

Given that the legal conclusions on which the juvenile court based its finding of good cause were erroneous, we must vacate the order granting the requested continuance. In doing so, however, we note that the juvenile court did not consider whether the State's proffered reason for a continuance constituted good cause. Accordingly, we remand the case so that the juvenile court may consider whether, under the circumstances of this case (including A. H.'s objection to the continuance and his expressed desire to admit to the charged crimes), the State's request for

additional time to determine whether to file a removal petition constituted the good cause necessary for a continuance.

*Judgment vacated and case remanded with direction. Andrews, P. J., and Miller, J., concur*.