**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**BROWN and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**June 26, 2023**

# In the Court of Appeals of Georgia

A23A0194. IN THE INTEREST OF B. R., a child.
A23A0356. IN THE INTEREST OF B. R., a child.

BROWN, Judge.

In this dependency case, the mother of B. R. ("the child"), a three-year-old girl born on December 13, 2019, appeals from two juvenile court orders issued after separate hearings.[1] In Case No. A23A0194, the mother asserts that the juvenile court erred in: (1) failing to issue an order with all requisite written findings of fact, including a specific basis for its finding of continued dependency; (2) failing to enforce the requirement that a permanency plan report be submitted five days before

---

[1] We have jurisdiction to consider a direct appeal from the orders before us because they both make findings regarding dependency and custody. See *In the Interest of I. S.*, 278 Ga. 859, 860-861 (607 SE2d 546) (2005); *In the Interest of J. P.*, 267 Ga. 492 (480 SE2d 8) (1997); *In the Interest of S. J.*, 270 Ga. App. 598, 607 (1) (a) (607 SE2d 225) (2004).

a scheduled hearing or properly incorporating it into its order and the record; (3) granting a continuance in the absence of good cause; and (4) finding that clear and convincing evidence established continued dependency. In Case No. A23A0356, the mother makes essentially the same arguments excluding the lack of good cause for a continuance. For the reasons outlined below, we vacate the juvenile court's orders and remand these cases with instruction.

*Procedural Background*

In appeals from orders in a dependency case, we construe the evidence in the light most favorable to the juvenile court's findings. See *In the Interest of A. T.*, 309 Ga. App. 822 (711 SE2d 382) (2011). In this case, the record shows that the DeKalb County Department of Family and Children's Services ("DFCS") took custody of the child when she was four days old because the mother used cocaine throughout her pregnancy, the child's urine tested positive for cocaine at birth, and the mother tested positive for cocaine at the hospital. The child was born at 37 weeks gestation and weighed three pounds. The mother did not seek prenatal care during her pregnancy and stated that she used illicit substances to manage her stress. DFCS placed the child in foster care.

2

On January 14, 2020, DFCS filed a dependency petition outlining the above facts in addition to asserting that the mother "has a history of illegal drug [use] that impairs her ability to parent the child," the mother "has prior CPS history with DeKalb DFCS," the mother tested positive for cocaine in a drug test in open court on December 20, 2019, that the father refused to submit to such a test, and that the father had recently reported to DFCS that the mother was missing. At the time the petition was filed, the father had not yet legitimated the child or participated in DNA testing.

On March 13, 2020, following a hearing held on January 29, 2020, the juvenile court entered an "Order of Adjudication and Temporary Disposition" finding that the child was dependent based upon a list of the same facts asserted in DFCS's dependency petition. It ordered the child to remain in DFCS custody.

On April 28, 2020, the juvenile court entered a disposition order following a 75-day review conducted on February 19, 2020, in which the court "received oral and documentary evidence." It ordered and adopted "the concurrent permanency plan of reunification and adoption to which the parties have agreed." It scheduled a permanency hearing for August 5, 2020.

On August 25, 2020, the juvenile court entered a "Permanency Hearing/Judicial Review" following a virtual hearing. It noted that the child was "not making as many

sounds as she should" and that a recommendation had been made for occupational and speech therapy. It found that the parents had "not completed their court-ordered case plan in order to reunify with the child." While the mother had completed a psychological/parenting assessment, she had not yet completed the goals of individual therapy, random drug screens, and stable housing. At that time, the parents were visiting with the child virtually. The permanency plan remained concurrent reunification and adoption.

By the time the court entered its next "Permanency Hearing/Judicial Review" order on February 17, 2021, the father had legitimated the child, and both parents were employed. While the parents were "making good progress on their case plan," they had not yet "completed their court ordered case plan in order to reunify with the child." Outstanding goals for the mother included individual therapy, parenting classes, random drug screens, and stable housing. Visitation continued to be virtual.

On August 4, 2021, the case was scheduled for a permanency hearing and "[p]re-[t]rial" on DFCS's petition to terminate parental rights.[2] In an order entered on September 1, 2021, the juvenile court continued the case "to perfect service on the

---

[2] The petition to terminate parental rights does not appear in the record before us.

4

mother." The order notes that "[t]he parents have not submitted to random drug screens and have not completed parenting classes."

When the parties appeared for the rescheduled pretrial hearing on September 1, 2021, the court accepted their joint request to hold a permanency hearing in lieu of the pretrial hearing.[3] The trial court's subsequent "Permanency Hearing/Judicial Review" order notes that the parents submitted to three random drug screens. Two urine screens for the mother were negative and a hair follicle test was positive; all three of the father's drug screens were negative. Additionally, both parents were employed and living together in stable housing suitable for the child. The child had begun speech therapy and was wearing a leg brace to help her walk. Visitation at the time of this order had recently changed to in-person, with one such visit having taken place. The court declined to order the child returned to her parents because they had not yet completed "their court-ordered case plans" but once again found they were "making good progress."

*Hearing and Order at Issue in Case No. A23A0194*

---

[3] Two months later, the juvenile court granted DCFS's motion to dismiss its petition to terminate parental rights.

At the next scheduled permanency hearing on March 2, 2022, the mother's attorney asked that the child be returned to the mother's custody because "there was no testimony that there was any connection between any positive [drug] screens and my client's ability to parent. . . . [She] has been appropriate with [the child] during the visits, she's been consistent with visits, and there haven't been any concerns." In its subsequent order, entered on April 26, 2022, nunc pro tunc to March 2, 2022, the juvenile court made more detailed findings of the parties' progress than it had in the past.[4] Specifically, the parents continued to live with one another and work, DFCS found their home to be "well furnished and suitable for the child," the parents visited the child weekly for three to four hours, and the transporter had "no concerns with the visits which are supervised in the home." It also noted that the father had successfully completed negative drug screens and denied the DFCS's offer to separate his case from that of the mother "in order for his home to be an approved and suitable placement for the child." With regard to the mother, the juvenile court recounted that she had tested positive four times out of sixteen drug screens, that she was still participating in individual counseling, as well as outpatient substance abuse treatment and Narcotics Anonymous. Based on a referral for inpatient drug treatment, the

---

[4] This is the first hearing for which a transcript appears in the record.

mother agreed to enroll, and DFCS located a program for her. The juvenile court found once again that the child needed to remain in foster care because "[t]he mother has not completed her court-ordered case plan in order to reunify with the child, and the father resides with the mother." The juvenile court's order stated that it "continued the matter for good cause [until April 27, 2022] to allow for the parents to undergo updated parental fitness assessments pursuant to OCGA § 15-11-111."[5] In its view, "the mother's untreated drug addiction places the child at risk." While the juvenile court reserved its final ruling "pending the results of these evaluations," it also concluded that the child remained a dependent child. During the hearing, the court explained that it could not "make a determination on the permanency issues without the additional information." Nonetheless, its order following the hearing states that it adopted the permanency plan for reunification and adoption submitted by DFCS, a copy of which does not appear in the record before us. It is unclear from the order what "remaining portion of the permanency hearing" was continued for good cause.

_____

[5] In the hearing, the juvenile court stated it was also continuing the case "to determine the feasibility of transferring it to family treatment court where they have a myriad of ongoing supports for families such as this."

*Additional Continuances*

The record before us contains no additional information about the scheduled April 27, 2022 hearing. On June 8, 2022, the parties appeared before the juvenile court; at the beginning of the hearing, the DFCS attorney announced it was "on for a continued permanency hearing," that the updated parenting assessments had been completed, and that DFCS had provided the mother with information about the drug court. However, because the mother's attorney had not had an opportunity to speak to her client about drug court specifics, another short continuance was requested. The mother's attorney raised no objection to another continuance, and the case was rescheduled for June 23, 2022. On June 22, 2022, the juvenile court entered an order, nunc pro tunc to June 8, 2022, rescheduling the case because the mother's attorney requested the continuance for them to have further discussions. It found the request constituted good cause for a continuance.

*Order and Hearing at Issue in Case No. A23A0356*

At the next hearing, held on June 23, 2022, no mention was made of the updated parental fitness assessments ordered by the juvenile court, and they do not appear in the record before us. The mother's attorney announced at the beginning of the hearing that she had gone over the family treatment court program with the

mother and determined that the mother would not be moving forward with it. The only testifying witnesses were the DFCS case manager and the parents.

The case manager testified that the father had completed his case plan and recently been granted unsupervised visitation with the child that he had not yet exercised. According to the caseworker, the father preferred to parent as a unit with the mother, and she explained to him that DFCS was at the point where it would have to consider termination proceedings due to continued, unresolved drug use by the mother. She explained that the father could obtain custody with a protection plan in place after demonstrating his ability to independently parent the child if the mother were in drug treatment or he could obtain sole custody and live apart from the mother.

The caseworker testified that the mother's case plan was incomplete because she had not yet completed drug treatment or six months of negative drug screens. DFCS made two referrals for drug treatment, one of which was not ideal because it was inpatient and would require the mother to quit her job and another hybrid program in which the mother was not willing to enroll. The mother inconsistently attended Narcotics Anonymous. According to the caseworker, the mother was consistently drug screened. She then testified, over the objection of the mother's counsel, about the results of various tests for which no documentation was provided

9

in the hearing. Specifically, an oral drug screen on June 21, 2022, that "was positive for alcohol and negative for any substances" and a hair follicle test in May 2022, that "was positive for cocaine, Benzoy, opioids, the level for Hydrocodone and for Oxycodone." The caseworker acknowledged that the mother had a prescription for Codeine/Oxycodone for a March 2022 procedure. Finally, she stated that the mother visited weekly with the child, that no concerns were reported after the visits, and that the mother had stable employment and housing.

The mother testified that she had not found a drug program that she was comfortable attending, that she no longer has a drug problem, and cannot "help that it's still showing up in [her] hair." The father testified that while he feels strongly about the mother's participation in their child's life, he was prepared to do what he had "to do to get [B. R.] back home." He explained that he had already raised three grown children and was confident that he could parent his young daughter. He also stated his belief that the mother was not using drugs or in need of treatment as she no longer had a drug problem.

In its order entered on July 28, 2022, nunc pro tunc to June 23, 2022, the juvenile court once again found that the child continued to be dependent and that continued removal of the child was in her best interest. It also adopted the

10

permanency plan submitted by DFCS, which is not in the record before us. It concluded that the child needed to remain in foster care for her safety because the mother "has not completed her court-ordered case plan in order to reunify with the child, and the father resides with the mother. Further, the father testified that he does not believe the mother still uses drugs and that the drug tests are incorrect." It further found that "the father's ability to independently parent the child is currently unknown." Its order recounts the testimony presented at the hearing that is summarized above. The juvenile court's order makes no mention of the updated parental fitness assessments it had previously ordered.

1. In both cases, the mother argues that the juvenile court's orders cannot stand because they fail to include the requisite, specific findings for dependency and parental unfitness. As explained below, we must vacate the juvenile court's orders and remand these cases with instruction.

Based on the title and content of its orders, it is clear that the juvenile court held joint periodic review and permanency plan hearings. See OCGA § 15-11-216 (a) (periodic reviews shall be held 75 days after child adjudicated dependent, four months after 75-day review, and thereafter as juvenile court determines necessary); OCGA § 15-11-230 (c) (permanency plan hearing to be held no less frequently than

11

every six months during time child adjudicated as dependent and continues in DFCS's custody). Following a periodic review hearing, the juvenile "court shall issue written findings of fact that include," among other requirements, "[w]hy a child adjudicated as a dependent child continues to be a dependent child." OCGA § 15-11-218 (a) (1). An order issued after a permanency plan hearing does not require a finding of continued dependency but rather six to eleven required findings, depending upon the age and placement of the child, related to efforts to achieve permanency for the child. OCGA § 15-11-232 (a).

With regard to a finding of continued dependency, this Court has made clear that an order finding dependency should include "findings of fact demonstrating clear and convincing evidence that (a) present, not merely past or future, dependency existed as to [a] child[ ], and (b) the dependency resulted from unfitness on the part of the [parent]." *In the Interest of M. C.*, 365 Ga. App. 398, 403 (1) (878 SE2d 625) (2022). See also *In the Interest of A. B.*, 350 Ga. App. 158, 159 (1) (828 SE2d 394) (2019). An order which "contains no finding whatsoever with regard to parental unfitness" prevents this Court "from making an intelligent review of the mother's challenges to the sufficiency of the hearing evidence." (Citation and punctuation omitted.) *In the Interest of M. C.*, 365 Ga. App. at 404 (1). In such a case, we vacate

12

the juvenile court's order and remand the case for the juvenile court to make the appropriate findings. Id.

Here, the juvenile court's orders failed to include a finding with regard to parental unfitness, and for this reason alone, we must vacate its orders and remand for the juvenile court to make appropriate findings, after which, the mother may file another appeal if necessary. *In the Interest of K. K.*, 364 Ga. App. 82, 85 (874 SE2d 110) (2022); *In the Interest of M. C.*, 365 Ga. App. at 404 (1). Other omitted findings should also be remedied upon the return of the case to juvenile court. Specifically, "[t]he date by which it is likely that a child adjudicated as a dependent child will be returned to his or her home, placed for adoption, or placed with a permanent guardian or in some other alternative permanent placement." OCGA § 15-11-232 (a) (6). Additionally, as pointed out by the mother on appeal, the permanency plans prepared by DFCS and referenced in the juvenile court's orders as having been adopted by the juvenile court do not appear in the record before us, and our review is hindered by their absence. See OCGA § 15-11-231 (requirement for DFCS to submit permanency plan report at least five days before permanency plan hearing); OCGA § 15-11-232 (b) (outlining requirements for "permanency plan incorporated in the court's order").

13

2. In Case No. A23A0194, the mother contends that "[t]he juvenile court did not establish a sufficient basis for good cause to sua sponte continue portions of the March 2, 2022 proceeding,[6] nor did the order include with specificity what matters the juvenile court was actually continuing or reserving its ruling on." She asserts the continuance "caused an unwarranted delay in the return of custody," "increas[ed] the risk of the disconnect from her child," and resulted in her "missing the critical developmental milestones of a toddler as well as the joyous 'first' moments of [the child] that can never be recaptured." She asks that we reverse "the juvenile court's finding of continued dependency" as a result.

In support of these contentions, the mother relies upon OCGA § 15-11-110 and the Supreme Court of Georgia's opinion in *In the Interest of I. L. M.*, 304 Ga. 114 (816 SE2d 620) (2018). OCGA § 15-11-110 provides, in pertinent part:

> (a) Upon request of an attorney for a party, the court may continue any hearing under this article beyond the time limit within which the hearing is otherwise required to be held; provided, however, that no continuance shall be granted that is contrary to the interests of the child. In considering a child's interests, the court shall give substantial weight to a child's need for prompt resolution of his or her custody status, the

---

[6] The mother makes no argument with regard to the second continuance requested on June 8, 2022.

need to provide a child with a stable environment, and the damage to a child of prolonged temporary placements.

(b) Continuances shall be granted only upon a showing of good cause and only for that period of time shown to be necessary by the evidence presented at the hearing on the motion. Whenever any continuance is granted, the facts proved which require the continuance shall be entered in the court record.

In *I. L. M.*, the Supreme Court of Georgia interpreted this provision in conjunction with OCGA § 15-11-181 (a), which governs the time limits in which the initial adjudication hearing on a dependency petition must occur and the adjudication be completed. 304 Ga. at 117. Significantly, OCGA § 15-11-181 (a) expressly states that "[i]f adjudication is not completed within 60 days from the date [the] child was taken into protective custody, the petition alleging dependency may be dismissed without prejudice." After finding that the juvenile court's order continuing the case "failed to meet the stringent requirements of OCGA § 15-11-110 (b) for ordering a continuance beyond that statutory period," the Supreme Court of Georgia concluded that the juvenile court abused its discretion by denying the parents' motion to dismiss the dependency petition based on OCGA § 15-11-181 (a). (Footnote omitted.) *In the Interest of I. L. M.*, 304 Ga. at 121-122.

*In the Interest of I. L. M.*, is not controlling here. First, OCGA § 15-11-181 (a) does not apply as we are not addressing the continuance of an initial adjudication hearing more than 60 days after the child was taken into protective custody, and there is no other statute expressly authorizing dismissal of the dependency petition for failing to meet a hearing deadline. Second, unlike *In the Interest of I. L. M.*, the mother did not file, and the trial court did not rule, on a motion to dismiss. Finally, as the mother points out, it is unclear from the juvenile court's order what was being continued as the juvenile court's order found continued dependency and adopted the concurrent permanency plan for reunification and adoption. Without this information, this Court cannot evaluate the propriety of the juvenile court's continuance. Therefore, under the particular facts and circumstances of this case and in light of the need to vacate and remand the orders as outlined above, we vacate the continuance order and instruct the juvenile court to specify on remand what matters were continued following the March 2, 2022 hearing. Cf. *In the Interest of A. H.*, 332 Ga. App. 590, 596 (2) (774 SE2d 163) (2015).

3. In light of our holding in Divisions 1 and 2, we need not address the mother's arguments regarding the adequacy and evidentiary basis of the juvenile

court's findings of continued dependency. *In the Interest of M. C.*, 365 Ga. App. at 404 (2).

*Judgments vacated and both cases remanded with direction. Markle, J., concurs. McFadden, P. J., concurs fully and specially.*

A23A0194, A23A0356. IN THE INTEREST OF B. R., a child (two

cases).

MCFADDEN, Presiding Judge, concurring fully and specially.

I agree with all that is said in the majority opinion. I would also address the mother's argument that the juvenile court erred by considering hearsay testimony when the court found continued dependency in the order entered April 26, 2022, following the March 2, 2022, hearing. That argument is likely to continue to arise in subsequent proceedings below. So I would hold, that at least on the record before us today, it lacks merit.

As the mother acknowledges, OCGA § 15-11-230 (f) provides that at permanency plan hearings, such as the hearing that took place on March 2, 2022, "[t]he court may consider any evidence, including hearsay evidence, that the court finds to be relevant, reliable, and necessary. . . ." The mother concedes that this statute applies, but argues that the hearsay testimony presented at the hearing was not

relevant, reliable, and necessary. She seems to argue that the juvenile court was required to articulate its findings regarding the relevance, reliability, and necessity of the hearsay testimony.

Nothing in the Code section requires the juvenile court to articulate her findings about the relevance, reliability, and necessity of hearsay testimony. Whether to consider such evidence under this statute is a matter within the discretion of the court. And "[u]nless shown otherwise, the trial court is presumed to have followed the law." *Henderson v. State*, 295 Ga. 333, 335 (1) (b) (759 SE2d 827) (2014) (citation and punctuation omitted). The mother has not shown otherwise.

At the hearing, the case worker testified that Academy Family Empowerment conducted a hair follicle drug screen. She explained that the drug screener emails the case worker when she is "headed to the client, and post screening she . . . text[s the case worker] that it was completed, it was denied or it was a missed appointment." The case worker testified that the mother's screening was completed; that the screener emailed the case worker the results of the screening; and that the mother tested positive for cocaine and the presence of "benzonite."

The mother objected to this testimony on the ground that DFCS had to provide an affidavit for authentication of the test results or had to lay some other foundation

to establish their reliability, if the case worker lacked personal knowledge, and that DFCS had not established a chain of custody. She did not object to the relevance or necessity of the testimony.

The juvenile court overruled the mother's objections, ruling that she would allow the hearsay to the extent the case worker could identify the basis of her knowledge and that the mother's objections would go to the weight of the testimony. Given this ruling, which clearly shows that the juvenile court considered the mother's objection to the hearsay testimony on the ground of reliability, the mother has not overcome the presumption that the court followed OCGA § 15-11-230 (f).